134 N.J. Super. 567 (1975)
342 A.2d 529
DE METRIOS STAMBOULOS AND GEORGIA STAMBOULOS, HIS WIFE, AND ANNA STAMBOULOS, PLAINTIFFS-RESPONDENTS,
v.
CHRIGHTON McKEE AND JOHANNA MC KEE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted June 10, 1975.
Decided June 17, 1975.
*569 Before Judges CARTON, CRANE and KOLE.
Messrs. Fornabai and Zimmermann, attorneys for appellants (Mr. James V. Zimmermann, on the brief).
Messrs. Gladstone, Hart, Mandis, Rathe and Shedd, attorneys for respondents (Mr. Mitchell S. Camp on the brief).
The opinion of the court was delivered by KOLE, J.A.D.
Defendants have been month-to-month tenants of an apartment in a four-family apartment building in Fort Lee for a substantial period of time. Plaintiffs acquired title to the building on May 31, 1974. On that day they served on defendants a notice to quit and demand for possession of the apartment as of June 30, 1974. One of the plaintiffs apparently desired to reside therein. After the notice was served it appeared that another apartment in the building would become vacant in July, but it had been promised to a friend of one of the plaintiffs.
Defendants held over beyond June 30. This dispossess action was thereafter instituted. The trial judge held that plaintiffs had complied with the 30-day notice required by law; that the right to possession of the apartment vested in the landlord when the notice was given on May 31, 1974, and that the newly enacted eviction statute, effective June 25, 1974, pertaining to residential property such as that here involved, L. 1974, c. 49,[1] did not apply since the landlords' vested right to possession accrued prior to its effective date. He granted a judgment for possession to plaintiffs. This appeal followed.
There is adequate credible evidence to sustain the trial judge's determination that the required 30-day notice was served in time, as required by law. That finding, accordingly, *570 is affirmed. State v. Johnson, 42 N.J. 146 (1964).
We have concluded, however, that the judge erred in holding that plaintiffs' right to possession vested upon service of the notice to quit and demand for possession, rather than on June 30, 1974 when possession was to be surrendered. Hence, the new eviction statute, effective June 25, 1974, applied to this proceeding. Since good cause for eviction under that statute was not shown, the action should have been dismissed. See 25 Fairmount Ave., Inc. v. Stockton, 130 N.J. Super. 276 (Cty. D. Ct. 1974).
We are in substantial agreement with the rationale of Stockton. As applied to a month-to-month tenancy, the right to possession in the landlord did not arise until the time specified in the 30-day notice for the termination of the tenancy  here, June 30, 1974. On that date the new statute was applicable and precluded, with respect to residential tenants such as defendants, the termination of the month-to-month tenancy, the vesting of a right to possession in the landlord, or the dispossession of the tenants until and unless one of the "good cause" requirements specified in § 2 of the statute, N.J.S.A. 2A:18-61.1, was shown.
We do not agree with plaintiffs that N.J.S.A. 2A:18-56, requiring one month's notice to quit in order to terminate a month-to-month tenancy, indicates that the tenancy is terminated merely by the giving of the notice. That provision has been said to be intended to protect the tenant by giving him time to readjust his affairs before his tenancy is terminated on the date set forth in the notice. Gretkowski v. Wojciechowski, 26 N.J. Super. 245, 250 (App. Div. 1953); Pa. R.R. Co. v. L. Albert & Son, Inc., 26 N.J. Super. 508, 511 (App. Div. 1953), cert. den. 13 N.J. 361 (1953). See also, Bhar Realty Corp. v. Becker, 49 N.J. Super. 585 (App. Div. 1958).
Moreover, a month-to-month tenancy is a continuing tenancy, which does not give rise to a new relationship for each month. Even under the law as it existed prior to this *571 statute, a new tenancy was established only when the existing monthly tenancy was actually ended and the new one commenced. Thus, where the landlord gave a proper notice to quit and demand for possession at the end of the month, unless the tenant paid an increased rental commencing the beginning of the following month, the holding over of the tenant created a new tenancy at the increased rental. See Bhar Realty Corp. v. Becker, supra; Saracino v. Capital Properties Associates, Inc., 50 N.J. Super. 81, 87 (App. Div. 1958); Hertzberg v. Siegel, 8 N.J. Super. 226 (App. Div. 1952); Dector v. Phelps, 136 N.J.L. 53 (Sup. Ct. 1947); Finkelstein v. Herson, 55 N.J.L. 217 (Sup. Ct. 1893).
Additionally, the notice to quit under N.J.S.A. 2A:18-56 is one of the procedural requirements to effect a termination of the tenancy in order to give the county district court jurisdiction in a dispossess action. The mere giving of it does not create or affect substantive rights between a landlord and tenant. Stockton, supra, 130 N.J. Super. at 286. Compare Bhar Realty Corp. v. Becker, supra, 49 N.J. Super. at 588-589.
Thus, the new statute, effective June 25, 1974, five days before the landlord's right to possession vested, will be given prospective effect in the present case. The problem of retroactive deprivation of vested rights, therefore, is not involved. Compare Engler v. Capital Management Corp., 112 N.J. Super. 445, 447 (Ch. Div. 1970), where the lease had expired, giving rise to an immediate vested right of possession in the landlord, and the court refused to apply the later enacted retaliatory eviction act, N.J.S.A. 2A:42-10.10. See also, Rothman v. Rothman, 65 N.J. 219, 225-232 (1974); Nickell v. Gall, 49 N.J. 186 (1967); Troy Hills Village, Inc. v. Fischler, 122 N.J. Super. 572, 578-579 (Law Div. 1971), aff'd o.b. 122 N.J. Super. 525 (App. Div. 1973).
Plaintiffs contend that the denial of their right as landowners to terminate a month-to-month tenancy in order to *572 occupy the premises themselves violates fundamental property rights and is unreasonable and arbitrary since it bears no rational relationship to the announced statutory objective.
The express purpose of the new statute here involved was stated by the Legislature as follows:
At present, there are no limitations imposed by statute upon the reasons a landlord may utilize to evict a tenant. As a result, residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems. This is a serious matter, particularly now that there is a critical shortage of rental housing space in New Jersey. This act shall limit the eviction of tenants by landlords to reasonable grounds and provide that suitable notice shall be given to tenants where an action for eviction is instituted by the landlord. [Statement attached to L. 1974, c. 49]
The statute was adopted in response to a legislative recognition of a problem facing tenants at a time when a critical housing shortage exists. Courts have also recognized the current rental housing shortage. See, e.g., Inganamorte v. Fort Lee, 62 N.J. 521 (1973); Marini v. Ireland, 56 N.J. 130 (1970); Samuelson v. Quinones, 119 N.J. Super. 338 (App. Div. 1972). The intent of this legislation is to limit the eviction of tenants by landlords to the statutory grounds with respect to premises not excluded from its coverage. Stockton, supra 130 N.J. Super. at 287-288. See Bradley v. Rapp, 132 N.J. Super. 429 (App. Div. 1975).
There is a presumption of constitutionality of a legislative enactment. The party contesting its validity has a heavy burden of proof. Private property rights are always subject to the reasonable exercise of the state's police power, where the protection of the health, safety and general welfare of the people are concerned. Rothman v. Rothman, supra;; David v. Vesta Co., 45 N.J. 301 (1965); Fried v. Kervick, 34 N.J. 68 (1961); Jamouneau v. Harner, 16 N.J. 500 (1954), cert. den. 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955).
*573 To support their contention with respect to the constitutional invalidity of the statute as applied to them, plaintiffs make the following arguments: (1) they are being deprived of living quarters in their own building by tenants who would have had no legal authority to do so under prior law; (2) earlier rent control legislation adopted during periods of housing shortages permitted evictions where the landlord in good faith desired the premises for his own or his family's use as a housing accommodation; (3) provisions for this kind of relief to the owner constitute a recognition that the present statute is unreasonable, arbitrary and discriminatory as applied to owners, such as plaintiffs, who desire the apartment for their own use; (4) to deprive plaintiff's of the right to occupy an apartment which they intended for their own use when they purchased the building bears no rational relationship to the statutory objective; (5) the new legislation in effect converts a month-to-month tenancy to a perpetual tenancy, terminable "for all practical purposes," except for statutory "good cause," at the will of the tenant, thereby impairing plaintiffs' contract rights and the right personally to assume possession of their own property, and (6) this result could not have been intended by the Legislature.
Plaintiff's arguments are without merit.
The legislative intent is clear. The statute does not permit the good faith intention of the landlord to occupy the rented premises to serve as a reason for terminating the tenancy or obtaining possession. Whether this was an oversight or not we do not know. We note that the act specifically excludes from its coverage owner-occupied premises with not more than two rental units. N.J.S.A. 2A:18-61.1. However, the remedy is not to seek judicial relief but rather to obtain amendatory legislation to cover this kind of situation. Compare Bradley v. Rapp, supra, relating to the owner-occupied two rental unit exclusion.
We must enforce the statute as written. We cannot supply a provision. Dacunzo v. Edgye, 19 N.J. 443 (1955). *574 Nor does the fact that prior legislation of a similar nature provided this kind of relief to a landlord mean that its absence makes the statute per se unreasonable or constitutionally infirm. It may well be that the Legislature considered the possibility of abuse to which such a provision might lend itself, without considering other restrictive safeguards against such abuse.
In any event, we cannot say that, in view of the purpose of the new statute, the situation facing these plaintiffs creates such an unreasonable result as to require invalidating the act as applied to them in the present factual setting.
Although the representation by the tenants that they have resided in their apartment for the previous 28 years was contained solely in an affidavit, there is no doubt of their occupancy thereof for a substantial period. There is evidence in the record that another apartment was available in the building in July 1974 which either plaintiffs could have occupied or defendants now say they would have accepted, if offered. The promise of the apartment to a friend of plaintiffs' conceivably might have been withdrawn under the circumstances. To this extent, therefore, the hardship and alleged interference with property rights have been created by plaintiffs themselves.
In any event, even if the other apartment were not then available, it would contravene the statutory goal to oust defendants at this juncture from quarters they have comfortably occupied for a lengthy period of time, where they have not created any of the problems referred to as "good cause" under the statute. Such action would expose them to the hazards of the very housing crisis to which the statute is addressed. The thrust of the new legislation is to maintain the status quo with respect to tenants who presently have housing in order not to aggravate that crisis, except where a statutory exclusion or basis for eviction exists. See Bradley v. Rapp, supra. In view of the substantial relation between this legislation and the valid public interest, *575 we have concluded that the situation presented by plaintiffs does not represent "beyond all question a palpable invasion of rights secured by the organic law." Reingold v. Harper, 6 N.J. 182, 195 (1951).
We are not persuaded, under the circumstances here, that the legislation operates to impair contract rights to the extent that it may be said to convert a month-to-month tenancy to a perpetual tenancy terminable solely at the will of the tenant. The constitutional interdiction against impairment of contracts is not an absolute one. It is subject to the implied condition that a contract's fulfillment may be frustrated by the appropriate exercise, as here, of the police power. See Brookchester, Inc. v. Ligham, 17 N.J. 460 (1955); Albigese v. Jersey City, 127 N.J. Super. 101 (Law Div. 1974), mod. on other grounds 129 N.J. Super. 567 (App. Div. 1974), and cases cited therein; American Trial Lawyers Ass'n v. N.J. Sup. Ct., 126 N.J. Super. 577 (App. Div. 1974), aff'd 66 N.J. 258 (1974). See also, P.T. & L. Constr. Co. v. Comm'r, Dept. of Transp., 60 N.J. 308 (1972).
Reversed.
NOTES
[1] This statute amended N.J.S.A. 2A:18-53 and added N.J.S.A. 2A:18-61.1 et seq.