HARRY B. HELMSLEY ET AL., PLAINTIFFS-APPELLANTS, v. BOROUGH OF FORT LEE ET AL., DEFENDANTS-RESPONDENTS.

AMERICANA ASSOCIATES ET AL., PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS, v. BOROUGH OF FORT LEE ET AL., DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.

NEW JERSEY REALTY COMPANY ET AL., PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS, v. BOROUGH OF FORT LEE ET AL., DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.

Submitted November 14, 1979—Decided January 22, 1980.

*Richard F. Aronsohn, Martin Kesselhaut* and *David N. Ravin* for appellants (*Aronsohn, Kahn* and *Springstead* and *Ravin* and *Kesselhaut*, attorneys; *Aronsohn, Lauren B. Cohen, Kesselhaut* and *Bernard Schenkler*, on the briefs).

*William T. Reilly* for respondents (*McCarter* and *English*, attorneys; *Richard C. Cooper*, of counsel).

PER CURIAM.

This proceeding involves distribution of the Fort Lee Escrow Fund. Originally established by trial court order on July 31, 1975, it permits landlords to raise rents in accordance with the percentage increase of the Consumer Price Index on condition that the difference between that percentage and 2.5% be held in trust. Participating landlords were required at the outset to contribute retroactively to November 1974, when Fort Lee *Ord. No.* 74–32 became effective. At present more than 5.3 million dollars are held by the court-appointed escrow agent subject to the claims of thousands of present and former Fort Lee tenants.

Our decision in this case embodied no specific order regarding liquidation of the Fort Lee Escrow Fund. Following its publication, application was made to the Law Division for distribution consistent with our mandate. On February 14, 1979, after consideration of proposals and argument by all counsel, the trial court signed Order # 1 on Distribution. It established substantive principles and a procedural mechanism for resolution of disputed claims against the fund. Appeals to the Appellate

Division were filed from those portions of the order affecting apportionment of funds between landlords and tenants. Application was also made to this Court for a stay and a relaxation of the rules under *R.* 1:1–2 to permit us to hear the matter while pending in the Appellate Division. On March 13, 1979, we stayed implementation of the trial court's distribution plan and directed that the escrow fund be continued.

At this time, it is in the public interest to terminate all aspects of the seemingly endless litigation generated by rent control in Fort Lee from the inception of control in 1972 to the effective date of the Maximum Allowable Percentage formula (hereinafter MAP) contained in *Ord. No.* 76–8. In addition, an inordinate consumption of time and expense might occur if distribution were commenced prior to exhaustion of the appellate process. Therefore, to supplement our opinion in this matter, *Helmsley v. Borough of Fort Lee*, 78 *N.J.* 200 (1978), we have assumed jurisdiction, reviewed the proposed distribution plan and considered the problem of ascertaining present base rents in Fort Lee.

Order # 1 on Distribution correctly applies our prior decision with two exceptions. First, for distribution purposes, the 2.5% limitation superseded the Consumer Price Index[1] as the maximum permissible rental increase on November 6, 1974. This is the operative date of *Ord. No.* 74–32 and the time when the Fort Lee Escrow Fund commenced. Secondly, the valid portion of *Ord. No.* 76–8, imposing MAP, became effective by its terms on May 2, 1979, 30 days after the United States Supreme Court declined jurisdiction to hear an appeal from the judgment of our Court.

---

[1] Actually increases were limited to the difference between the Consumer Price Index three months prior to expiration of the lease and the Consumer Price Index on the date the last previous lease term commenced. *Ord. No.* 74–26, *Ord. No.* 74–32. These ordinances merely select a date for measurement of this fluctuating index and are a valid exercise of legislative power. See *Hutton Park Gardens v. West Orange Town Council*, 68 *N.J.* 543 (1975).

 Finally, we turn to the establishment of current base rents in Fort Lee. We have held previously that the 2.5% limitation on rent increases was confiscatory as of December 31, 1976. *Helmsley v. Borough of Fort Lee*, 78 *N.J.* at 233. While MAP is validly designed to limit increases, it must not be applied to such a confiscatory base. Computation of proper base rents shall begin with the November 1974 rent. All disputes between Fort Lee landlords and tenants concerning lawful rents prior to that date are time barred if not heretofore asserted in court or before the Rent Leveling Board. Thus, with the exception of pending cases, the November 1974 rent is conclusively presumed to be correct. To that figure shall be added the maximum permissible rent increases—2.5% per annum from November 6, 1974 to December 31, 1976; Consumer Price Index calculations from January 1, 1977 to May 2, 1979—and allowable tax surcharges.[2]

The restraints set forth in our order of March 13, 1979 are hereby dissolved. Disbursement of the Fort Lee Escrow Fund shall begin immediately and proceed expeditiously in accordance with Order # 1 on Distribution as modified by this opinion.

*For clarification of prior opinion*—Chief Justice HUGHES, and Justices MOUNTAIN, SULLIVAN, CLIFFORD, SCHREIBER and HANDLER—6.

*Opposed*—None.

---

[2]Ordinarily Fort Lee's treatment of tax surcharges as separate items and not part of base rent would be valid. But under the narrow circumstances of this case, tax pass-throughs must become part of the base rent as of May 2, 1979. Our prior decision combined with the institution of MAP—wherein tax increases are included in a general formula for computing rent increases—makes this necessary.