839 A.2d 102 (2004)
365 N.J. Super. 325
J.M.J. NEW JERSEY PROPERTIES, INC., a New Jersey Corporation, Plaintiff-Appellant,
v.
Magdy M. KHUZAM, individually, Mohamed N. Selin, individually, Said Said, individually, Maria Auguillera, individually, Carmen Rosaria, individually, Maher Abdeo, individually, Manidouh Holim Ragheb, individually, Fawzy Fahmy, individually, Nara Gamal, individually, Mahamed Ahmed, individually, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 2003.
Decided January 9, 2004.
*104 William I. Strasser, Paramua, argued the cause for appellant (Strasser & Associates, attorneys; Mr. Strasser, of counsel; Mr. Strasser, Conrad M. Olear, and Robert A. Gorman, on the brief).
Anthony F. Gralewski, Jersey City, argued the cause for respondents Said, Ragheb, Fahmy, Gamal and Ahmed.
Respondent Magdy H. Khuzam did not file a brief.
Before Judges KESTIN, CUFF and WINKELSTEIN.
*103 The opinion of the court was delivered by WINKELSTEIN, J.A.D.
Plaintiff is a landlord and defendants are residential month-to-month tenants. On May 1, 2001, the landlord notified the tenants to vacate the leased premises by November 1, 2002, because the landlord intended to retire the building from residential use. See N.J.S.A. 2A:18-61.1(h); N.J.S.A. 2A:18-61.2d. Subsequently, on January 25, 2002, the landlord provided the tenants with another noticeto increase their rent, effective March 1, 2002. The tenants accepted the rent increase and continued in occupancy. In so doing, they claimed a new tenancy was created, which nullified the landlord's initial notice to terminate their tenancies by November 1. The Law Division agreed. The court concluded that because a new tenancy was created when the tenants paid the rent increase and remained in possession, the previously furnished eighteen-month notice of the landlord's intention to permanently retire the building from residential use was rendered invalid. We reverse. The tenancies created when the tenants held over at the new rent were limited in their term by the May 1, 2001 notice terminating the tenants' right to possession as of November 1, 2002.
The facts are not in dispute. Plaintiff is the owner of a nine-unit apartment building in Jersey City. Defendants occupy the building without written leases. Plaintiff intends to permanently retire the building from residential use and convert it to a day care center. Consequently, on May 1, 2001, each tenant was sent a notice that stated, in part:
2. Termination of Lease. Your lease is TERMINATED (ended) as of November 1, 2002.
3. Demand for possession. You must leave and vacate this rented property on or before that date (November 1, 2002). This means you must move out and deliver possession for me, your Landlord.
4. Reason. Your lease is terminated because
Pursuant to N.J.S.A. 2A:18-16.1(h) "the owner seeks to permanently retire the building from residential use." The owners of the property at 110 Romaine Avenue seek to demolish the building in order to erect a day care center.[1]
*105 A week later, plaintiff sent another notice to each tenant, the only change from the May 1 notice being that plaintiff's name was corrected from J.M.J. New Jersey Investments, Inc., to J.M.J. New Properties, Inc. Furthermore, because some of the tenants did not receive the May 1, 2001 notice until May 9, 2001, plaintiff sent a subsequent notice to each tenant extending the deadline to vacate the property to December 31, 2002.[2]
Between the date the first notice was sent on May 1 and the expiration of the eighteen-month notification period, plaintiff decided to raise the tenants' rent. Accordingly, on January 25, 2002, plaintiff notified each tenant of a 1.8% rent increase effective March 1, 2002, representing the amount permitted under the Jersey City Rent Control Ordinance. The notice, in part, stated:
2. PURPOSE OF NOTICE. Your Landlord wants to increase your rent. In order to do this your Landlord must terminate (end) your tenancy and offer you continued tenancy until November 1, 2002 at an increase in rent. Your Landlord may also make other reasonable changes in your tenancy.
3. TERMINATION OF TENANCY. Your present tenancy is terminated as of February 28, 2002. You must quit and vacate the property as of that date (date of termination). This means you must move out and deliver possession to your Landlord.
4. RENT. You may rent this property after the date of termination for $617.93 per month. Your rent is payable in advance, on the first day of every month beginning on March 1, 2002. This amount is the rent you are currently paying ($607.00) plus an additional 1.8%. This increase of 1.8% is the allowable rent leveling increase per Jersey City Rent Control Ordinance § 260-3.
5. OTHER CHANGES IN YOUR TENANCY. Term of TenancyYour tenancy is now Month to Month until November 1, 2002. On that date the building will be permanently retired from residential use pursuant to N.J.S.A. 2A:18-61.1(h). You were given notice of this on May 1, 2001.
6. ACCEPTANCE. If you remain in possession of this rental property after the termination date of February 28, 2002, it will mean that you accept and agree to this rent increase and all other changes to your lease.
The tenants paid the requested rent increase and continued in possession, but claimed that by holding over at the new rent a new tenancy was created, which negated the prior notice that required them to vacate the property. Upon being informed of this position, plaintiff filed a verified complaint and order to show cause asking the court to declare that defendants must vacate their apartments by December 31, 2002. On the return date of the order to show cause, the Law Division found that neither the incorrect name of plaintiff nor extending the time for the tenants to vacate the premises until December 31, 2002, rendered the May 1, 2001 notice ineffective. Neither of these decisions is challenged on appeal. Rather, the primary focus of this appeal is the court's holding that the landlord would need to serve the tenants with a new eighteen-month *106 notice before the landlord could retire the premises from residential use.
In arriving at this decision, the judge reasoned that when the tenants held over as of March 1, 2002, after paying the increased rent, new tenancies were created, rendering void the prior eighteen-month notice to remove the dwelling from the residential market. See N.J.S.A. 2A:18-61.2d. We agree with the judge that holding over and paying the increased rent created new tenancies. However, we differ with the court's conclusion as to the effect the new tenancies had on the previously provided notice to the tenants terminating their right to possession as of November 1, 2002.
In response to a rental housing shortage, the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12(Act), limited evictions of tenants to reasonable grounds on suitable notice. Morristown Mem'l Hosp. v. Wokem Mortgage & Realty Co., Inc., 192 N.J.Super. 182, 186, 469 A.2d 515 (App. Div.1983); Bradley v. Rapp, 132 N.J.Super. 429, 432-33, 334 A.2d 61 (App.Div. 1975). Prior to its enactment, a landlord had a right to possess its leased property without good cause, subject to certain procedural limitations. 25 Fairmount Ave., Inc. v. Stockton, 130 N.J.Super. 276, 283, 326 A.2d 106 (1974). The Act limited a landlord's right to possession of the leased premises, restricting the landlord to "good cause" before a tenant could be dispossessed. Id. at 283-84, 326 A.2d 106. It provided a tenant with the right to "remain in possession of the rented property until there is `good cause' for him to be removed." Id. at 284, 326 A.2d 106.
Our "`courts have been insistent upon the landlord's punctilious compliance with all statutory eviction procedures,' including notice provisions." Weise v. Dover Gen. Hosp. & Med. Ctr., 257 N.J.Super. 499, 504, 608 A.2d 960 (App. Div.1992) (quoting Sacks Realty, supra, 248 N.J.Super. at 426, 591 A.2d 660). The Act "provides substantial protections to a residential tenant." Starns v. Am. Baptist Estates of Red Bank, 352 N.J.Super. 327, 331, 800 A.2d 182 (App.Div.2002). Indeed, the effect of the Act "`is to create a perpetual tenancy, virtually a life interest, in favor of a tenant of residential premises covered by the Act as to whom there is no statutory cause for eviction under N.J.S.A. 2A:18-61.1.'" Ibid. (quoting Center Ave. Realty, Inc. v. Smith, 264 N.J.Super. 344, 350, 624 A.2d 996 (App.Div.1993)). Yet, being in derogation of a landlord's common-law right of ownership, the Act must be strictly construed. Morristown Mem'l Hosp., supra, 192 N.J.Super. at 188, 469 A.2d 515; Terhune Courts v. Sgambati, 163 N.J.Super. 218, 223, 394 A.2d 416 (1978), aff'd, 170 N.J.Super. 477, 406 A.2d 1330 (App.Div.1979), certif. denied, 84 N.J. 418, 420 A.2d 331 (1980).
At the time plaintiff sent the May 1, 2001 notice to defendants, each defendant was a month-to-month tenant. "A month-to-month tenancy is a continuing relationship that remains unabated at its original terms until terminated by one of the parties." Harry's Village, Inc. v. Egg Harbor Township, 89 N.J. 576, 583, 446 A.2d 862 (1982); Stamboulos v. McKee, 134 N.J.Super. 567, 570-71, 342 A.2d 529 (App.Div.1975); Skyline Gardens, Inc. v. McGarry, 22 N.J.Super. 193, 195-96, 91 A.2d 621 (App.Div.1952). "To increase the rent of a month-to-month tenant, the landlord must serve a notice to quit terminating the old tenancy and another notice offering a new tenancy at an increased rent." Harry's Village, supra, 89 N.J. at 583, 446 A.2d 862. After receiving proper notice to quit and notice of rent increase, if a tenant holds over, a new tenancy is *107 created at the increased rent. Ibid.; Stamboulos, supra, 134 N.J.Super. at 571, 342 A.2d 529.
In this case, the Law Division, based on the new tenancy created when the tenants held over at the new rent, determined that a new eighteen-month notice would be necessary before the landlord could retire the premises from residential use. We find this interpretation of the effect the new tenancy would have on the pre-existing landlord-tenant relationship to be too broad. The result of the trial judge's decisionto preclude a landlord from receiving a rent increase during the eighteen-month notification perioddoes not, in our opinion, foster the purposes of the Act. On the contrary, the decision to deny the landlord the right to a rent increase during the eighteen-month notification period called for by N.J.S.A. 2A:18-61.2d does an injustice to the landlord without providing additional benefit to the interests of the tenants.
When a court interprets a legislative enactment, it may "properly consider both language of the [A]ct and the object sought to be attained by the legislation." 2A Sutherland Statutory Construction, § 45:08 (6th ed.2000). Construing a statute, we look to its legislative purpose and give the words "a common-sense meaning within the context of that purpose." In re T.S., 364 N.J.Super. 1, 6, 834 A.2d 419 (App.Div.2003). Legislation must be read so as to give effect to all of its provisions and to the legislative will, while "[a]t the same time we should strive to avoid an anomalous, unreasonable, inconceivable or absurd result." Bradley, supra, 132 N.J.Super. at 433, 334 A.2d 61. Not the words, but the internal sense of the statute controls. In re T.S., supra, 364 N.J.Super. at 7, 834 A.2d 419. Statutes are to be construed by the "common sense of the situation ... rather than [with] `scholastic strictness.'" Bradley, supra, 132 N.J.Super. at 433, 334 A.2d 61.
Here, bringing these principles to bear against the facts presented, we do not find that a new eighteen-month notice was needed to terminate defendants' tenancies as of November 1, 2002, as extended to December 31, 2002. Although we are mindful that a new tenancy is created when a month-to-month tenant holds over and pays an increased rent, what effect the new tenancy has on the existing landlord-tenant relationship is another matter. Doubtlessly, certain covenants and obligations of both parties continue from the old tenancy to the new. For example, a landlord continues to have an obligation to furnish the tenants with heat, and perhaps other utilities, and provide the tenants with the right to quiet enjoyment of the leased premises, while a tenant continues to be bound by its own prior obligations, which may include, for instance, not keeping pets on the premises, not acting disorderly, and not otherwise interfering with the other tenants' rights to quiet enjoyment. Cf. Trust Co. of New Jersey v. Doherty, 117 N.J.L. 433, 435, 189 A. 54 (E. & A.1937) (when tenant holds over with consent of landlord, tenancy presumed to be upon same terms as original lease); Center Ave. Realty, supra, 264 N.J.Super. at 348, 624 A.2d 996 (when tenancy for stated term of year or more converted to month-to-month tenancy by reason of expiration of written lease, holdover tenant subject to terms and conditions of written lease other than its durational term); Heyman v. Bishop, 15 N.J.Super. 266, 269, 83 A.2d 344 (App.Div.1951) (holdover tenant on same terms as original lease); but cf. Sheild v. Welch, 4 N.J. 563, 568, 73 A.2d 536 (1950) (month-to-month tenancy created at expiration of one-year lease not a renewal or extension of one year term and sales commission provision of one-year *108 lease collateral and not enforceable after lease expired).
Under the facts here, the remaining term of the old tenancy, which required the tenants to deliver possession to the landlord by December 31, 2002, was not abrogated by the rent increase. The notice of the rent increase the landlord provided to the tenants specifically informed them that the term of the new tenancy would continue to be month-to-month "until November 1, 2002," when "the building will be permanently retired from residential use pursuant to N.J.S.A. 2A:18-61.1(h). You were given notice of this on May 1, 2001." Thus, when the tenants held over and accepted the new tenancy, they were aware that the new tenancy, although month-to-month, would terminate on November 1, 2002, later extended to December 31, 2002, and they continued in possession subject to this condition. Just as certain obligations implicit in the old tenancy continued to be applicable to the new tenancy, this restriction in the tenants' right to continue to indefinitely occupy the landlord's property also remained effective under the new tenancy.
Although we have uncovered no case directly addressing this issue, our analysis in Bradley, supra, 132 N.J.Super. 429, 334 A.2d 61, is instructive. With the intent to live in the home with his wife and five children, the plaintiff purchased a two-family dwelling in West Orange. Id. at 431, 334 A.2d 61. The defendant lived in one unit with his mother and another tenant lived in the other. Ibid. Because the Act excludes from its coverage owner-occupied dwellings with no more than two rental units, N.J.S.A. 2A:18-61.1, the issue was whether the dwelling was automatically exempt from the Act because the plaintiff intended to take personal occupancy of the premises, or, whether the plaintiff would have to wait to take occupancy for the occurrence of a "good cause" situation as defined under the Act. Id. at 432-33, 334 A.2d 61. We concluded that "one who purchases a two-family premises for the express purpose of immediately residing therein renders the premises `owner-occupied' within the meaning and intendment of that phrase as used in N.J.S.A. 2A:18-61.1." Id. at 434, 334 A.2d 61. We reasoned that even though the statute was silent on the issue, the Legislature could not "reasonably be deemed to have intended that such a purchaser [would be] precluded from [taking possession of the premises] except upon permanently retiring the newly purchased premises from the rental housing market [pursuant to N.J.S.A. 2A:18-61.1(h)], or running the risk and vagaries of a not `unconscionable rent increase' [pursuant to N.J.S.A. 2A:18-61.1(f)], or waiting for a `good cause' situation to arise." Id. at 433-34, 334 A.2d 61.
We apply a similar analysis here. Although the Act is silent on the issue, we can conceive of no reason why the Legislature would have intended to preclude a landlord from receiving a rent increase to which it was otherwise entitled simply because it had previously notified the tenants it would be removing the premises from the residential market in eighteen months. A purpose of a notice to quit is to give a tenant time "to decide whether to accept changes in the rental terms or to seek alternate living arrangements." Harry's Village, supra, 89 N.J. at 584, 446 A.2d 862. It "assures tenants of time to consent to changes in their tenancy and protects them from arbitrary, unilateral changes imposed by landlords." Ibid. Nothing in the landlord's January 25, 2002 notice of a rent increase undermined these goals. The 1.8% rent increase was not imposed to force the tenants to surrender possession of the property prior to the expiration of the eighteen-month notification *109 period. The notice of rent increase did not reduce the time previously afforded to the tenants to adjust their affairs and find new housing before the building would be retired from residential use; significantly, the notice, in bold print, reminded the tenants that although they would continue to be month-to-month tenants, they would still need to vacate the property by November 1, 2002. The intent of the Actto protect the tenants against arbitrary, unilateral action by the landlordwas not adversely affected.
Conversely, a landlord should not be required to secure a rent increase to which it is otherwise entitled only in return for giving up the right to enforce a previously served notice to remove the property from the residential housing market by a certain date. Such a policy would dissuade a landlord, when in a position to do so, from giving a tenant more than the minimum eighteen months notice when it intends to remove a property from the housing market. Additionally, should the landlord be denied its right to an otherwise permissible increase, an argument could be made that the landlord was being required to subsidize the housing needs of its tenants, which could be subject to a constitutional challenge as not providing the landlord the ability to obtain a "just and reasonable" return on its investment. See Helmsley v. Borough of Fort Lee, 78 N.J. 200, 223, 394 A.2d 65 (1978), clarified by 82 N.J. 128, 411 A.2d 203 (1980); Troy Hills Village v. Township Council of the Township of Parsippany-Troy Hills, 68 N.J. 604, 620, 629, 350 A.2d 34 (1975). Neither of these alternatives is sound public policy.
Defendants point out that the Legislature permits landlords to request rent increases during the three-year notice period when converting a rental unit to a condominium pursuant to N.J.S.A. 2A:18-61.31, and argues that if the Legislature had intended to allow a rent increase to be requested under N.J.S.A. 2A:18-61.1(h), it could have done so. Although that argument has some facial appeal, this principle, generally referred to as the expressio unius doctrine, "is merely an aid in determining legislative intent, not a rule of law" and is applied with "great caution." Allstate Ins. Co. v. Malec, 104 N.J. 1, 8, 514 A.2d 832 (1986). Consequently, in exercising this caution, we chose not to apply it in the context of this case. Rather, we are guided by a corollary axiomthat it is "unrealistic to assume that whenever the legislature passes a statute it has in mind all prior acts relating to the same subject matter." 2A Sutherland, supra, § 51.01.
Doing so, we are not persuaded that simply because the Legislature expressly gave a landlord who chose to convert its property to a condominium form of ownership the right to seek a rent increase during the three-year notice period, by implication the Legislature did not intend to provide a landlord seeking to remove a property from the residential housing market with the same right. As we noted previously, the Act, being in derogation of a landlord's common law rights, must be construed strictly. And the language of the Act does not preclude a landlord from seeking a rent increase during the statutory eighteen-month notice period. To construe the Act as did the trial court, would create restrictions on a landlord's rights to its property beyond those imposed by the Legislature. We should enforce the Act as written, and not supply a provision not included by the Legislature. See Stamboulos, supra, 134 N.J.Super. at 573, 342 A.2d 529.
In summary, we disagree with the court's interpretation of the effects of the new tenancies created when defendants held over at an increased rent. We are satisfied that the holdover tenancies *110 were limited in term by the original eighteen-month notice to quit, as extended to December 31, 2002. Accordingly, the decision of the Law Division is reversed.
Because the date for the tenants to vacate the property has passed, we remand to the Law Division to fix a date for plaintiff to take possession of the property. If the court deems it necessary, it may hold a plenary hearing to determine a reasonable time for the tenants to relocate. The Law Division shall render its decision no later than forty-five days from the date of this opinion.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] Plaintiff also notified the Department of Community Affairs and the local rent control board. See N.J.S.A. 2A:18-61.1c and61.1d; Sacks Realty Co. v. Batch, 248 N.J.Super. 424, 425, 591 A.2d 660 (App.Div.1991).
[2] On October 25, 2001, plaintiff, in error, mailed another notice to the tenants, to terminate the tenancies as of November 30, 2001. No tenant vacated the premises, nor did plaintiff take any action to remove any of the tenants, based on this notice.