MORRISTOWN MEMORIAL HOSPITAL, A NOT-FOR-PROFIT COR-
PORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RE-
SPONDENT, v. WOKEM MORTGAGE & REALTY CO., INC., A
DELAWARE CORPORATION, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 9, 1983—Decided December 20, 1983.

Before Judges BOTTER, PRESSLER and O'BRIEN.[1]

*Stephen B. Rockoff* argued the cause for appellant (*Geltzeiler, Mandel, Berezin & Feinstein,* attorneys).

*Douglas S. Brierley* argued the cause for respondent (*Schenck, Price, Smith & King,* attorneys; *Stephen G. Sepaniak* of counsel).

The opinion of the court was delivered by

PRESSLER, J.A.D.

This appeal raises a novel question of interpretation of the Anti-Eviction Act, *N.J.S.A.* 2A:18–61.1 *et seq.*

Plaintiff Morristown Memorial Hospital, a nonprofit hospital corporation (hospital), has for some years functioned not only as a community hospital but also as a post-graduate teaching facility. It is represented to us that there are currently some 82 students and residents involved in the hospital's educational and training programs, most of which are of one year's duration.

---

[1] With the consent of the parties, Judge O'Brien participated in the decision although he did not participate in oral argument.

Some of these students and residents and their families are housed on hospital property. Some make their own living arrangements. Twenty-six of them are subtenants of apartments which the hospital has leased since the mid-1960's. These 26 apartments are in a 140-unit apartment complex now owned by defendant located across the street from the hospital itself.

Pursuant to the original arrangement between the hospital and the former owner of the apartment complex, an arrangement predating the Anti-Eviction Act, the hospital, as tenant, entered into a written one-year lease for each of the 26 apartments. Each lease was annually renewed thereafter by successive one-year extension-of-lease agreements. Although each lease contained the customary provision prohibiting assignment or sublease without landlord's consent, it nevertheless appears that the original owner gave what was tantamount to a blanket prior consent to the subleasing of the apartments by the hospital to such of its personnel, usually medical residents, as it selected. The hospital, as tenant, paid the rent on all 26 apartments by a single monthly check, deducting appropriate amounts from the salary of the occupants. It also claims to have undertaken a voluntary inspection and maintenance program covering the 26 apartments. On those occasions when an occupant vacated prior to the expiration of a year's tenancy, the hospital routinely placed another of its employees in the vacated apartment on an emergent, temporary basis pending the arrival of a new one-year resident.

In 1982 the apartment complex was purchased by defendant Wokem Mortgage & Realty Co. (Wokem). Wokem refused to renew the leases on the ground that the nature of the tenancy was encompassed neither by the Anti-Eviction Act nor by the municipal rent-levelling ordinance. The hospital, accordingly, brought this declaratory judgment action seeking an adjudication that its tenancy of the apartments was within the scope of both the state and the municipal legislation. Wokem appeals from a judgment entered in the hospital's favor following a non-jury trial. We reverse.

The dispositive issue is whether the nature of the arrangement between the hospital and the original landlord and the consequent implementation of that arrangement bring the tenancy here within the ambit of the Anti-Eviction Act. The consequence of Anti-Eviction Act classification is significant. If the tenancy is encompassed by the act, then the landlord is, by virtue of *N.J.S.A.* 2A:18–61.3, obliged to continuously renew the 26 leases except for good cause as defined by *N.J.S.A.* 2A:18–61.1. In effect, then, the hospital's lease of the 26 apartments would be, at its option, virtually in perpetuity, subject only to such rent increases as the rent-levelling ordinance permits. The hospital, moreover, would enjoy, to the exclusion of the landlord, such incidents of ownership as tenant selection and would deprive the landlord of the customary prerogative of seeking the obvious benefits of a stable and long-term occupancy for each of the 26 apartments.

*N.J.S.A.* 2A:18–61.1 affords the protection of the act to the "lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant" of specified premises "leased for residential purposes." While it would appear, therefore, that these 26 units come within the literal definition of a protected tenancy since they are used for residential purposes, we are nevertheless persuaded that that conclusion is contrary not only to the policy of the act and its legislative intent but also to its substantive provision.

In the view of the trial judge, the decisive fact here was the residential use of the apartments in accordance with the hospital-tenant's plan of providing living accommodations for its transient personnel. Certainly, from the perspective of the hospital's subtenants, the units are both occupied and leased for residential purposes. But from the perspective of the tenant-hospital, the residential purpose of each of the leases is not an end in itself but is rather incidental to and a means of serving its larger and underlying institutional goals and objectives. As it explains in its brief, these objectives are served by "the

physical proximity of the complex" which "not only aided in the recruitment of residents and students by allowing them to live near the hospital with their families, but also enhanced patient care and the efficiency of the active emergency department in the institution." It is, therefore, clear to us that the purpose of the hospital's tenancy here is at best an institutional and residential hybrid neither envisioned nor addressed by the act. The question then is whether this dual-purpose tenancy comes within the protection of the act. We conclude that it does not.

■ The purpose of the Anti-Eviction Act is clearly set forth in the statement appended to *Assembly Bill* 1586, enacted as *L.* 1974, *c.* 49, and codified as *N.J.S.A.* 2A:18–61.1. That statement reads as follows:

> At present, there are no limitations imposed by statute upon the reasons a landlord may utilize to evict a tenant. As a result, residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems. This is a serious matter, particularly now that there is a critical shortage of rental housing space in New Jersey. This act shall limit the eviction of tenants by landlords to reasonable grounds and provide that suitable notice shall be given to tenants when an action for eviction is instituted by the landlord.

The fundamental aim of the act is thus to meet the rental housing shortage by affording residential tenants the right, absent good cause for eviction, to continue to live in their homes without fear of eviction or lease non-renewal and thereby to protect them from involuntary displacement. *See, e.g., Puttrich v. Smith,* 170 *N.J.Super.* 572, 575–576 (App.Div.1979); *Stamboulos v. McKee,* 134 *N.J.Super.* 567, 572–573 (App.Div.1975). This policy is evidently not implicated where, as here, the residential occupancy is intended to be and actually is of a transient nature. Clearly then, if the act were applied to this tenancy, it would not be for the purpose of protecting the rights of individual occupants to remain in their homes but rather for the purpose of advancing the institutional needs and interests of the hospital.

We disagree with the trial judge's further conclusion that the subtenancies here are analogous to those contemplated by *N.J.S.A.* 2A:18–61.1(m). That section permits eviction when "the landlord or owner conditioned the tenancy upon and in consider-

ation for the tenant's employment by the landlord or owner as superintendent, janitor or in some other capacity and such employment is being terminated." It was thus the trial judge's holding that if any of the hospital's subtenants terminated their employment relationship with the hospital their subtenancies would also be terminated. The hospital's tenancy, however, would continue and it would have the right then to sublet to another transient employee. It is our view that the section (m) analogy does not justify applicability of the act to the hospital's tenancy. Rather, it serves to demonstrate its inapplicability. The hospital personnel are not employees of the landlord or owner and their occupancy in no way serves the interests of the landlord or owner. These subtenants are in fact strangers to the owner or landlord. Conditioning their right to continued occupancy on their continued employment relationship with the hospital, which is neither the landlord nor the owner, simply reinforces the conclusion that the primary purpose of the hospital's tenancy is the promotion of its institutional functions as a community hospital and post-graduate training facility.

It is our view that the only manner in which the act could apply here would be to protect the subtenancies of those present occupants who wish to remain in their apartments after their short-term employment relationship with the hospital has come to an end. The trial judge held, however, that those occupants are not protected by the act. The only effect, then, of applying the act here would be to permit the hospital to extend its dormitory facilities onto another's private property against the will of the owner of that property. This was not the act's intent. We are therefore satisfied that the definitional phrase of *N.J.S.A.* 2A:18–61.1 limiting the act's applicability to premises "leased for residential purposes" means a lease whose purpose is fundamentally and primarily residential and excludes leases which, like these, serve to a substantial degree nonresidential purposes of the original, primary tenant.

In so concluding, we do not, of course, intend to deprecate the social utility, community benefit and enhancement of

the general welfare which result from the hospital's health care and post-graduate training activities. Our point is simply that promotion of these activities is not the objective of the Anti-Eviction Act. Since the act is in derogation of the landlord's common-law rights of ownership, it must be strictly construed. *See Harden v. Pritzert,* 178 *N.J.Super.* 237 (App.Div.1981). The derogation of those rights has passed constitutional muster based on the proposition that in view of prevalent market conditions in the rental-housing industry, landlord rights must to some extent and on general welfare grounds defer to the needs of the tenant population of this state. *See, e.g., Stamboulos v. McKee, supra.* It is hardly a necessary corollary of that proposition that the private rental-housing market must also defer to the institutional needs of eleemosynary associations. Certainly the Anti-Eviction Act does not so provide.

With respect to the applicability of the municipal rent-levelling ordinance, we simply note that the issue is rendered virtually moot if the landlord is not required to renew the hospital's annual lease. We are, however, satisfied that so long as any of the apartments continue to be occupied by their present residential subtenants, those occupants are clearly entitled to the protection of the ordinance.

The judgment appealed from is reversed. We remand to the trial court for entry of judgment consistent with this opinion.