262 N.J. Super. 241 (1993)
620 A.2d 1056
KEARNY COURT ASSOCIATES, A LIMITED PARTNERSHIP, AND NEW JERSEY REALTY COMPANY, A CORPORATION, PLAINTIFFS-APPELLANTS,
v.
BARRY SPENCE, EDISON RENT CONTROL BOARD AND PAMELA M. PELLEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 11, 1993.
Decided February 11, 1993.
*242 Before Judges PETRELLA and KEEFE.
Richard D. Forest, attorney for appellant.
Casper P. Boehm, attorney for respondent Barry Spence.
No brief was filed on behalf of respondent Edison Rent Control Board.
Respondent Pamela M. Pelley did not participate in this appeal.
PER CURIAM.
Kearny Court Associates, a limited partnership, and New Jersey Realty Company, collectively referred to herein as "Landlord," appeal from the dismissal of their suit in lieu of prerogative writ against the Edison Rent Control Board (Board), and two tenants of Landlord's building.
The Law Division judge upheld the decision of the Board which determined that Pamela M. Pelley and Barry Spence were tenants who were protected by the township's rent control ordinance, notwithstanding the fact that after they initially became tenants, Spence had been a part-time superintendent at *243 the apartment complex owned by Landlord, and Pelley had formerly been the wife of Gordon Pelley who had also served as a part-time superintendent.
Landlord argues on appeal that because of the employment as part-time superintendents, the tenants had terminated their initial tenancies with the Landlord and thus had no rights to assert under the rent control ordinance when Landlord terminated their part-time employment at the apartment complex. It also argues that waiver and estoppel should bar the tenant from asserting a remedy under the rent leveling ordinance when the tenant induced the Landlord to enter into an agreement which it would not otherwise have done.
Edison adopted its rent control ordinance on April 25, 1973. Spence became a tenant of Landlord under a written lease on October 1, 1979. On August 15, 1982 he signed the last lease which was to be in effect prior to his becoming an employee of a prior owner of the complex. On October 9, 1982, Spence became a part-time superintendent for part of the apartment complex and functioned in that capacity until April 1984. Spence was allowed to live in his apartment rent-free during the time he was a part-time superintendent, and received $100 per month in salary. The Landlord also agreed to pay his gas and electric bills, as well as telephone toll calls.
In April 1984 Spence's part-time superintendent position was terminated, apparently due to a requirement of the local building department that someone be available full time to grant access to apartments that needed to be inspected. The then-landlord did not consider Spence a prior tenant because he had been an employee. Spence was told that he could remain in his apartment if he paid rent of $475 per month under a new lease dated April 1, 1984.
The Pelleys had become tenants under a written lease in May 1971 and paid rent until June 1978 when Mr. Pelley was employed as a part-time superintendent under an arrangement similar to that for Spence. Kearny Court Associates became *244 the owner of the complex in April 1985. Its principal, John Krantz, decided to employ a full-time superintendent and offered Pelley the position. According to Krantz, Pelley turned this offer down because he did not want to leave his employment at Ford Motor Company. Mrs. Pelley contended, however, that the full-time job was never offered to her former husband because Krantz had heard that he was "lazy." She stated that her husband was simply terminated from the part-time position. In any event, Krantz took the position thereafter that he needed the apartment for a full-time superintendent, and told them they would have to vacate the premises. In his testimony, Krantz said that his resistance finally "broke down" after emotional reactions by Mrs. Pelley and he allowed them to remain in the same apartment with the understanding that they would be treated as if they just moved into that apartment. They began paying rent of $590 per month under a new lease dated May 23, 1985.
Subsequently, both Spence and Pelley challenged the amount of rent charged them before the Board. The Board concluded that both Pelley and Spence were protected by the rent control ordinance. The Law Division judge upheld those determinations.
This appeal implicates an interpretation of N.J.S.A. 2A:18-61.1(m) as one of the grounds for removal of a tenant for good cause specified in N.J.S.A. 2A:18-61.1. The statute provides:
No lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant may be removed by the county district court or the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, other than owner-occupied premises with not more than two rental units or a hotel, motel or other guest house or part thereof rented to a transient guest or seasonal tenant, except upon establishment of one of the following grounds as good cause:
........
m. The landlord or owner conditioned the tenancy upon and in consideration for the tenant's employment by the landlord or owner as superintendent, janitor or in some other capacity and such employment is being terminated.... [N.J.S.A. 2A:18-61.1(m) (emphasis added).]
*245 See 23A New Jersey Practice, Landlord and Tenant Law § 4125, at 235 (4th ed. 1990) ("The purpose of this statutory section permitting removal of a superintendent or janitor whose job is terminated and whose tenancy is conditioned on that employment was to permit a landlord to properly provide living space for a new building-related employee where the employment calls for that person's presence in the building.").
In support of their argument that the landlord-tenant relationship was terminated and a new master-servant relationship was created (which would have permitted eviction under 2A:18-61.1(m)) upon the tenants becoming employed as superintendents, the appellants quote one commentator's views:
If the occupation of the residential premises is in consideration for and a condition of the employment of the tenant-employee by the landlord-employer as superintendent, janitor or in some other capacity, the occupancy is governed by the law of landlord-tenant including N.J.S.A. 2A:18-61.1(m). A person may occupy premises as a tenant and yet be a servant of the owner, even though the rental is satisfied by service. An example of the latter situation is where an existing tenant takes over the duties of superintendent and receives a credit toward part of the rent due as the compensation for the position. Of course the parties may agree that the occupancy of the premises be pursuant to a landlord-tenant relationship regardless of the nature of the employment. [22 New Jersey Practice, Landlord and Tenant Law § 13, at 16 (footnotes omitted).]
Curiously, this citation seems to undercut the appellants' argument because it recognizes that an existing tenant who becomes a superintendent and receives credit towards his or her rent may still "occupy premises as a tenant." See id. (emphasis added).
In Cruz v. Reatique, 212 N.J. Super. 195, 514 A.2d 549 (Law Div. 1986), the court was faced with a very similar situation to that presented in the instant case. The plaintiff landlord bought an apartment complex where the defendant tenant had resided for many years before more recently (at the behest of the former owner) taking on part-time janitorial duties in exchange for lower rent. Almost immediately after purchasing the complex, the landlord terminated defendant's position and sought to remove him from the building pursuant to N.J.S.A. 2A:18-61.1(m). 212 N.J. Super. at 197, 514 A.2d 549. In light *246 of the harsh three day notice requirement for the removal of superintendents, see 2A:18-61.2a,[1] the court concluded that "the requirement in paragraph (m) that the tenancy be conditioned on the employment in question requires that such employment and the providing of living space be simultaneous." 212 N.J. Super. at 199, 514 A.2d 549.
The judge held that N.J.S.A. 2A:18-61.1(m) does not apply to a situation in which a tenancy preexisted the employment of the tenant as a part-time superintendent. He reasoned that "[a] person already in possession who thereafter accepts some building-related duties cannot reasonably be expected to appreciate the fact that he [or she] could be dispossessed if his [or her] job is terminated."
We note that this rationale was followed in Village Associates v. Perez, 253 N.J. Super. 507, 602 A.2d 304 (Law Div. 1991), which found the good cause ground inapplicable because the "living space was provided five years after the employment," thus lacking the "simultaneous" requirement found necessary in Cruz. Id. 253 N.J. Super. at 510, 602 A.2d 304. The Village Associates case observed:
The test of the applicability of paragraph "(m)" must be that the provision of living space to the tenant was part of the consideration for the employment contract between the landlord and the tenant and that the tenancy was created only because of the employment contract. [Ibid.]
We consider both Cruz and Village Associates on point and persuasive authority.
Landlord's arguments with respect to waiver and estoppel are rejected. Waiver of rights under the rent control laws are not favored since they violate public policy. See Tave v. Furst, 182 N.J. Super. 497, 499-500, 442 A.2d 658 (Cty.Ct. 1981); 52 C.J.S. Landlord & Tenant § 551.18, at 577 (1968); *247 23A New Jersey Practice, Landlord and Tenant Law § 5003, at 471. See generally Jamouneau v. Harner, 16 N.J. 500, 513, 109 A.2d 640 (1954), cert. denied, 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955); Lutz v. Goldberg, 7 N.J. Super. 288, 292, 73 A.2d 65 (App.Div. 1950); 28 Am.Jur.2d Estoppel and Waiver §§ 161, 164 (1966). Nor do we find any equity under the circumstances of this case which would warrant giving Landlord the benefit of equitable estoppel. The Landlord could not have dispossessed either Spence or Pelley under N.J.S.A. 2A:18-61.1(m). Since Landlord had no right to do so, it suffered no detriment in reliance on the claimed promises of the tenants to sign new leases.
Affirmed.
NOTES
[1] In order to evict a tenant under N.J.S.A. 2A:18-61.1(m), the landlord must make a "written demand and give[] written notice for delivery of possession of the premises" three days before instituting an action for possession. N.J.S.A. 2A:18-61.2a. In the case presently on appeal, there was no indication that the appellant ever gave written notice to either tenant to vacate the premises.