**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0636-22

JN EQUITY PERTH AMBOY,
LLC,

     Plaintiff-Appellant,

v.

JIMMY HIRALDO,

     Defendant-Respondent.

_____

Submitted April 15, 2024 – Decided April 22, 2024

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. LT-002939-21.

Michael D. Mirne, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

     Appellant JN Equity Perth Amboy, LLC ("JN Equity"), appeals from the September 12, 2022 order dismissing its complaint seeking a judgment of

possession against respondent Jimmy Hiraldo. Following our review of the record and applicable legal principles, we affirm.

We summarize the facts developed in the record. Hiraldo was a tenant in a residential rental property at 203-205 Market Street in Perth Amboy. On August 19, 2021, the prior owner of the property, 203 Market, LLC ("203 Market"), filed the complaint in this action seeking a judgment of possession based on "[t]ermination of [t]enancy [c]onditioned upon [e]mployment pursuant to N.J.S.A. 2A:18-61.1(m)." 203 Market alleged Hiraldo "was employed by the [l]andlord as a worker in the building. The tenancy and rental were offered . . . contingent upon that employment. [Hiraldo]'s employment was terminated on August 10, 2021[, ]and [he] has failed to vacate the premises."

On March 23, 2022, the property was acquired by JN Equity. After acquiring the property, JN Equity accepted rent payments in the amount of $750 from Hiraldo for March and April 2022. On August 17, the court granted JN Equity's motion to amend the complaint to substitute JN Equity as plaintiff. On September 12, the court conducted a bench trial.

Hiraldo testified he originally rented his apartment at the property for $600 per month from a prior owner, Leon Crow, and lived in the same apartment for "[t]wenty something years." Hiraldo and Crow did not execute a written

lease agreement. At some point after his tenancy began, Hiraldo and Crow entered into an oral agreement under which Hiraldo agreed to work as the property superintendent in exchange for a "[r]ent reduction."

Isaac Nederman, an owner of JN Equity, testified he "was told" Hiraldo was an employee of 203 Market, and JN Equity "bought [the property] under th[e] assumption that [Hiraldo] was an employee and he[ i]s not anymore. And he is going to leave the premises." Nederman never received a copy of any employment agreement or lease with Hiraldo. According to Nederman, when JN Equity acquired the property, 203 Market assigned its lease agreements to JN Equity, but he was told Hiraldo "never had a lease. He was just there as the super and he did[]n[o]t have a lease."

Jay Grossman, a member of 203 Market, testified 203 Market never had a "super agreement" or lease agreement with Hiraldo. According to Grossman, 203 Market acquired the property from Crow. When 203 Market acquired the property, Hiraldo was already a tenant and had an existing "super agreement" with Crow. Grossman testified if there was a lease agreement with Hiraldo it was a lease agreement that existed with Crow and was assigned to 203 Market when it acquired the property. According to Grossman, Hiraldo lived at the property for "[m]any years" but he did not know how long.

3

Following the trial, the court entered an order dismissing the complaint supported by an oral opinion. The court found "no reason to . . . doubt" Hiraldo's testimony that he lived at the property for "around [twenty] years" and after he moved in "Crow asked if he would help . . . out around the . . . building," and he became the superintendent in exchange for a reduction in rent. The court found by accepting rent payments from Hiraldo for March and April 2022, after he was terminated as superintendent, JN Equity waived its right to seek a judgment of possession based on termination of employment and created a new month-to-month tenancy at the rate of $750 per month. The court rejected JN Equity's argument that it was required to accept the rent payments pursuant to N.J.S.A. 2A:42-10.16(a), because that statute applies only in nonpayment of rent cases. The court also found JN Equity failed to provide any evidence that Hiraldo was "paying below-market rent" to 203 Market and the court did not "believe it was the case."

On appeal, JN Equity argues the court erred by finding it created a new tenancy by accepting Hiraldo's rent payments because it was required to accept the rent payments pursuant to N.J.S.A. 2A:42-10.16(a) and N.J.S.A. 46:8-49.3. JN Equity also argues the court erred by finding a new tenancy at $750 per month because Hiraldo's "rent payments were held below market price in

A-0636-22

exchange for his services" and "following his termination, [he] began paying even less than his former lease amount."

We review final determinations made by the trial court "premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). The factual findings and legal conclusions of the trial judge are not disturbed "unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." In re Tr. Created by Agreement Dated Dec. 20, 1961, 194 N.J. 276, 284 (2008) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). We owe no deference to a trial court's interpretation of the law and the legal consequences that flow from established facts. Maldonado, 216 N.J. at 182-83 (citing Manalapan Realty L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995)).

We affirm substantially for the reasons set forth in the court's oral opinion. We add the following comments.

JN Equity's argument that it was required to accept Hiraldo's rent payments pursuant to N.J.S.A. 2A:42-10.16(a) and N.J.S.A. 46:8-49.3 lacks merit. As the court correctly determined, N.J.S.A. 2A:42-10.16(a) applies only

to "an eviction action for nonpayment of rent," and N.J.S.A. 46:8-49.3 applies to a violation of N.J.S.A. 2A:42-10.16(a). This was not an eviction action for nonpayment of rent and JN Equity was not required to accept Hiraldo's rent payments.

JN Equity's claim that Hiraldo was paying "below-market" rent and began paying even less after his employment was terminated is not persuasive. As the court found, the argument is not supported by any evidence in the record.

Additionally, JN Equity failed to establish a right to evict Hiraldo pursuant to N.J.S.A. 2A:18-61.1(m).[1] A residential tenant may not be evicted unless the landlord can establish one of the grounds for summary dispossession set forth under the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12. One of the enumerated grounds furnishing good cause to evict applies if the landlord establishes it conditioned the tenancy on the tenant's employment. Specifically, N.J.S.A. 2A:18-61.1 provides:

> No lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant may be removed by the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, . . . except

---

[1] We are "free to affirm the trial court's decision on grounds different from those relied upon by the trial court." State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011).

upon establishment of one of the following grounds as good cause:

. . . .

m.   The landlord or owner conditioned the tenancy upon and in consideration for the tenant's employment by the landlord or owner as superintendent, janitor or in some other capacity and such employment is being terminated.

By its express terms, N.J.S.A. 2A:18-61.1(m) applies only if the landlord proves the tenancy itself was conditioned on employment. The landlord cannot satisfy this burden by demonstrating only an agreement for reduced rent in exchange for employment. Rather, the landlord must prove the existence of an agreement that the tenant was only permitted to continue the tenancy during the term of employment. Moreover, if a tenancy existed before the landlord and tenant entered into an employment contract, as it did here, the landlord must prove it modified the original tenancy to provide the tenancy was conditioned on employment.

In Cruz v. Reatique, 212 N.J. Super. 195 (Law. Div. 1986), the court considered whether N.J.S.A. 2A:18-61.1(m) applies when a tenant later becomes an employee of the landlord. The tenant resided in the apartment complex for many years and subsequently became a part-time janitor for his landlord. Id. at 197. After his employment was terminated, the landlord served a notice seeking

7

possession of the premises.  <u>Ibid.</u>  The tenant refused to leave and offered to pay rent to his landlord.  <u>Ibid.</u>  The court held N.J.S.A. 2A:18-61.1(m) did not apply to a situation in which the tenancy preexisted the employment.  <u>Id.</u> at 199.

In <u>Village Associates v. Perez</u>, 253 N.J. Super. 507, 510 (Law. Div. 1991), the court followed the rationale expressed in <u>Cruz</u>.  There, Perez had been employed as a maintenance worker at the apartment complex and later became a tenant.  <u>Id.</u> at 508.  The court held that N.J.S.A. 2A:18-61.1(m) was inapplicable because "the living space was provided five years after the employment commenced[,] as in the situation in <u>Cruz</u> where the employment commenced several years after the tenancy was created."  <u>Id.</u> at 510.  The <u>Village Associates</u> court observed:  "The test of the applicability of paragraph '(m)' must be that the provision of living space to the tenant was part of the consideration for the employment contract between the landlord and the tenant and that the tenancy was created only because of the employment contract."  <u>Ibid.</u>

In <u>Kearny Court Associates v. Spence</u>, 262 N.J. Super. 241, 246 (App. Div. 1993), we concluded we were in accord with <u>Cruz</u> and <u>Village Associates</u>. We interpreted N.J.S.A. 2A:18-61.1(m) in the context of a landlord's suit in lieu of prerogative writ action against a rent control board and two tenants.  <u>Id.</u> at 242.  Both tenants became part-time superintendents of the landlord after having

maintained tenancies. Id. at 242-43. We held that N.J.S.A. 2A:18-61.1(m) was unavailable as a basis to dispossess the tenants. Id. at 247.

More recently, in The Meadows Foundation, Inc. v. Williamson, 368 N.J. Super. 416, 423 (App. Div. 2004), we concluded N.J.S.A. 2A:18-61.1(m) applied where the tenancy was "created only because the provision of living space was part of the consideration for caretaking and maintenance services necessitating on-grounds residence." As such, we noted that the tenancy did not "precede[] the 'employment' relationship." Ibid.

JN Equity failed to offer any evidence to establish Hiraldo's tenancy was conditioned on his employment. Neither JN Equity nor 203 Market offered any competent evidence regarding the tenancy agreement or employment agreement entered between Hiraldo and Crow many years earlier. Hiraldo, however, testified his tenancy began before he agreed to serve as superintendent and at some later date Crow offered him reduced rent in exchange for employment as superintendent. The court found "no reason to . . . doubt" Hiraldo's testimony.

JN Equity's claim that Hiraldo's tenancy was conditioned on his employment as superintendent is unsupported by the record. JN Equity failed to establish Hiraldo's initial agreement with Crow conditioned the tenancy on his employment, or that the agreement was subsequently modified by Crow, 203

9

Market, or JN Equity to include such a condition. At best, JN Equity established Hiraldo's right to some undetermined reduction in rent was conditioned on his employment, not the tenancy itself. JN Equity, therefore, failed to meet its burden to establish the applicability of N.J.S.A. 2A:18-61.1(m).

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0636-22