834 A.2d 419 (2003)
364 N.J. Super. 1
In the Matter of Registrant T.S.
Application for Judicial Review of Notification and Tier Designation.
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 2003.
Decided October 31, 2003.
*421 Theodore J. Romankow, Union County Prosecutor, attorney for appellant (Tanya Pushnack Friedman, of counsel and on the brief).
Yvonne Smith Segars, Public Defender, attorney for respondent (Michael Z. Buncher, Deputy Public Defender and Christopher J. Duffy, Assistant Deputy Public Defender, of counsel and on the brief).
Before Judges PETRELLA, WEFING and COLLESTER.
*420 The opinion of the court was delivered by PETRELLA, P.J.A.D.
The Union County Prosecutor (Prosecutor) appeals from a decision by the trial judge which denied classification of T.S. as a sex offender under "Megan's Law" (N.J.S.A. 2C:7-2) based on a kidnapping conviction in 1983. T.S. was convicted in 1983 of two counts of armed robbery (N.J.S.A. 2C:15-1a2), two counts of possession of a weapon (N.J.S.A. 2C:39-4a and 2C:39-5b), four counts of aggravated assault (N.J.S.A. 2C:12-1b4), and two counts of kidnapping (N.J.S.A. 2C:13-1b1 and 2C:13-1a). T.S. was sentenced to an aggregate term of forty years in prison, thirteen and one-third years without parole eligibility. During the time period he was incarcerated, Megan's Law became effective on October 31, 1994. He was paroled in 1997.
On appeal, the Prosecutor argues:
I. The trial court's finding that the registrant's kidnapping offense does not fall within the registration and community notification law violates the clear and plain meaning of the statute.
II. The court's finding that the registrant risk assessment scale was invalid as applied to T.S. was in error.
III. The court's order eliminating T.S.'s kidnapping offense from the purview of Megan's Law violates the Jacob Wetterling Act.[1]
The undisputed scenario giving rise to the kidnapping which forms the basis for the Prosecutor's position occurred on August 4, 1982, when T.S. was involved in the armed robbery of a grocery store. After the police suddenly arrived at the store while the robbery was in progress, T.S. took hostages and commandeered a car in an unsuccessful effort to facilitate his escape. One victim was a woman he used as a hostage as he left the store and the other was a thirteen-year-old female passenger in the car he hijacked. There was no hint of any sexual contact in the event.
Upon T.S.'s release from prison in 2002, he went to reside in Union County. Based on his kidnapping convictions, the Prosecutor's office notified T.S. of its intent to classify him as a "Tier Two" or moderate-risk offender, having given him a score of forty-nine on the Registrant Risk Assessment Scale (RRAS), a rating system prepared by the State. When T.S. received notice of the proposed classification completed by the Prosecutor, he contested it and sought judicial review.
*422 At oral argument before Judge Triarsi the Prosecutor conceded that T.S. had not touched or approached the thirteen-year-old girl sexually and did not assert that he had any sexual purpose to any of the crimes committed. It is clear he took the car, which happened to have the young passenger, to facilitate his escape and that was the offense for which he was convicted.
Judge Triarsi ruled against the Prosecutor and relieved T.S. from the registration and notification requirements of Megan's Law. The judge applied alternative rationales. First, he concluded that without "sexual connotations" to the kidnapping, Megan's Law does not apply based on Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995). In the alternative, he found that as applied to T.S. the result of the RRAS would be an anomaly because the RRAS presupposes a sexual offense.
The Prosecutor relies on language in N.J.S.A. 2C:7-2b(2) which provides in pertinent part:
For the purposes of this act a sex offense shall include the following:
* * *
(2) A conviction ... for aggravated sexual assault; sexual assault; aggravated criminal sexual contact; kidnapping pursuant to ... N.J.S. 2:13-1[c(2) ]; endangering the welfare of a child by engaging in sexual conduct which would impair or debauch the morals of the child pursuant to ... N.J.S. 2C:24-4[a]; endangering the welfare of a child pursuant to ... N.J.S. 2C:24-4[b(4) ]; luring or enticing pursuant to ... [N.J.S. 2C:13-6]; criminal sexual contact pursuant to N.J.S. 2C:14-3b if the victim is a minor; kidnapping pursuant to N.J.S. 2C:13-1, criminal restraint pursuant to N.J.S. 2C:13-2, or false imprisonment pursuant to N.J.S. 2C:13-3 if the victim is a minor and the offender is not the parent of the victim; knowingly promoting prostitution of a child pursuant to [N.J.S. 2C:34-1b(3) or (4) ]; ... [emphasis added].
His argument is that none of the emphasized offenses, i.e., kidnapping, criminal restraint and false imprisonment, require a sexual component, and therefore, the Legislature intended to include nonsexual offenses in the definition of sexual offenses for Megan's Law.
Such a narrow, technical reading of the statute is a disservice to the danger from sexual predators which motivated the legislators and the purposes intended by the Megan's Law Act "to protect the community from the dangers of recidivism by sexual offenders." In re Registrant J.M., 167 N.J. 490, 495, 772 A.2d 349 (2001).[2] For a more complete explication of the purposes of Megan's Law, see Doe v. Poritz, 142 N.J. 1, 12-18, 662 A.2d 367 (1995).
I.
In construing a statute, we must consider the legislative purpose, see City of Newark v. County of Essex, 160 N.J.Super. 105, 113, 388 A.2d 1311 (App.Div.1978), aff'd, 80 N.J. 143, 402 A.2d 916 (1979), and must give the words of the statute a common-sense meaning within the context of that purpose. See Houman v. Mayor & Council Borough of Pompton Lakes, 155 N.J.Super. 129, 169, 382 A.2d 413 (Law Div.1977). The words must be considered in the context of the entire section and given a common-sense meaning which advances the legislative purpose. Cressey v. *423 Campus Chefs, Div. of CVI Serv., Inc., 204 N.J.Super. 337, 342-343, 498 A.2d 1274 (App.Div.1985); State v. Stern, 197 N.J.Super. 49, 53, 484 A.2d 38 (App.Div. 1984). We should give a harmonizing construction to legislation and read it so as to give effect to all of its provisions and to the legislative will. State v. Channel Home Ctrs., 199 N.J.Super. 483, 489, 489 A.2d 1225 (App.Div.1985). See Hillsdale P.B.A. Local 207 v. Borough of Hillsdale, 263 N.J.Super. 163, 185 n. 13, 622 A.2d 872 (App.Div.1993), aff'd in part, rev'd in part, 137 N.J. 71, 644 A.2d 564 (1994); see also Sutherland Statutory Construction § 46.05, at 103 (5th ed.1992). Moreover, interpretations leading to absurd or unreasonable results should be avoided. State v. Gill, 47 N.J. 441, 444, 221 A.2d 521 (1966).
The most important factor in construing a statute is generally considered to be the intent of the Legislature, if it can be discerned. State v. Tischio, 107 N.J. 504, 510, 527 A.2d 388 (1987), appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988). It is not the words but the internal sense of the law that controls. The goal is to ascertain the intent of the Legislature. Other rules of construction are subordinate to this goal. Id. at 511, 527 A.2d 388. When a general proposition is particularized by specific examples, those examples are interpreted to be of the same type, ejusdem generis ("of the same kind or class"). State v. Hoffman, 149 N.J. 564, 584, 695 A.2d 236 (1997).
These principles of statutory construction and legislative harmonization make it clear beyond argument that Megan's Law is directed only toward sexual conduct cases.
Although the kidnapping offenses which trigger Megan's Law do not literally contain sexual conduct as an element, they are offenses which if performed by a sexual predator are at the heart of the fears which the law addresses. Notably, all the other offenses in N.J.S.A. 2C:7-2b(2) with which these kidnapping offenses are joined relate to sexual conduct. Therefore, the application of an ejusdem generis rule suggests that, in context, these kidnapping offenses refer to acts which also have a sexual component.
To interpret the statute as the Prosecutor argues in this case would lead to an absurd resultregistration of an individual as a sexual predator whose record is barren of any sexual misconduct, and as to whom there is neither a hint nor a claim of predatory impulses.
This anomaly becomes even more obvious when considered in the context of the testimony of T.S.'s expert who opined that the RRAS has no application to non-sex offenders and cannot be used to determine the risk of re-offense where there is no history of prior sexual misconduct. The administration of the Act, as reflected in the Attorney General's guidelines promulgated pursuant to N.J.S.A. 2C:7-8, focuses on the risk posed by sexual predators and procedures to identify the risk to the public of recidivism. See generally, In re Registrant J.M., supra, 167 N.J. at 495-501, 772 A.2d 349.
Doe v. Poritz upheld the constitutionality of Megan's Law, but specifically held that "[a]ll of these provisions of [Megan's Law] ... are tied together by the Statement of Legislative Purpose mentioned above found at the beginning of the [law]: to aid law enforcement in apprehending sex offenders and enable communities to protect themselves from such offenders." Doe, supra, 142 N.J. at 25, 662 A.2d 367. Moreover, Doe noted that the law is able to adjust the degree of community notification based on the offender's relative risk of *424 recidivism as it fulfills its aims as a preventative measure. Thus, Megan's Law was considered only as a means of dealing with sex offender recidivism. Ibid.
It would be entirely inconsistent with the statutory purpose of curtailing sexual recidivism if T.S. was subject to Megan's Law based on a particular kidnapping conviction where there was no sexual offense involved. Given the clear language of Doe v. Poritz, Megan's Law cannot be applied to kidnapping convictions without either a related or an underlying sexual offense. To the extent that Doe upheld Megan's Law, it did so only insofar as it applied to sex offenders. Any use of Megan's Law outside the boundaries of sex offender recidivism would call into question the legislative purpose of that law and potentially implicate constitutional proscriptions against ex post facto laws. See Doe, supra, 142 N.J. at 114-137, 662 A.2d 367 (Stein, J., dissenting).
We agree with the trial judge that T.S. is not required to register as a sexual offender. From the statutory construction, common sense, and the applicability of the RRAS and the notification procedures, it is clear that the State's contentions must be rejected.

II.
The Prosecutor next contends that the judge improperly precluded use of the RRAS. He completed the RRAS form for T.S. with a score of 49 and concluded T.S. was a "Moderate Risk of re-offense and should be classified as a TIER TWO offender." The score was largely based on T.S.'s use of a weapon in the 1982 offenses and his prior criminal history.
Doe v. Poritz made clear that the Prosecutor for the county in which a registrant resides has the burden of determining the level of notification required by Megan's Law as to individual sex offenders. Doe, supra, 142 N.J. at 23, 662 A.2d 367. To aid the Prosecutor in this task, the RRAS manual states that the RRAS was developed "to provide an objective standard on which to base the community notification decision mandated by statute and to insure that the notification law is applied in a uniform manner throughout the State." However, as stated in Doe, the RRAS is not intended to measure the actual risk of re-offense, but the relative risk of recidivism for an offender as compared to another low-risk or moderate-risk offender. Doe, supra, 142 N.J. at 34, 662 A.2d 367. Therefore, in keeping with the relative nature of the scale, if the statute requires registration, the offender would be subject to at least Tier One classification. As a limitation to the tier system, only those subject to registration under the statute can be tiered. Id. at 33, 662 A.2d 367. Furthermore, if the Prosecutor seeks either a Tier Two or Three classification, judicial review must be available to satisfy interests of due process. Id. at 30, 662 A.2d 367.
Given these guidelines, it is clear that the RRAS is inapplicable to T.S. because it is undisputed and unassailable that he was not convicted of, or charged with, a sexual offense in the indictment for the 1982 crimes.[3]See State v. Locurto, 157 N.J. 463, 470-471, 724 A.2d 234 (1999). Any argument that the RRAS is reliable as applied to T.S. is also inherently suspect because T.S. was given a moderate-risk score. It is contrary to the underlying theory of the RRAS and to the holding of Doe that anyone who did not commit a *425 prior sexual offense has a greater risk of committing a subsequent sexual offense than someone who has already committed one. The scale is calibrated to measure sexual recidivism. Without a prior sexual offense, any score is meaningless.
Likewise, no basis existed for a judge to find risk of re-offense for the purpose of determining community notification. T.S. had no prior sexual offense and his kidnapping conviction could not trigger the applicability of Megan's Law. Doe makes it clear that judicial review is only necessary under due process as applied to the Tier classification. Doe, supra, 142 N.J. at 30, 662 A.2d 367 ("The most significant change, or course, is the requirement, on application, of judicial review of the Tier classification."). Because tier classification was not warranted here, any determination by the court regarding the risk of a sexual nature re-offense would be baseless.
We do note that while cases such as In re J.M. may have approved the use of non-registrable offenses to determine the degree of recidivism once another sexual offense has triggered Megan's Law, J.M., supra, 167 N.J. at 506, 772 A.2d 349, these cases do not stand, as the Prosecutor argues, for the proposition that a non-registrable offense can supplant the requirement that there must be a sex offense under the statute to trigger applicability of Megan's Law.

III.
Finally, the Prosecutor contends that if Megan's Law did not allow T.S.'s 1983 kidnapping conviction to be considered a registrable offense, it would somehow violate the 1994 Jacob Wetterling Act (JWA), 42 U.S.C. § 14071, as amended.
The JWA was a 1994 recognition of and response to what was perceived to be a national problem of sexual crimes against children. House of Representatives Report No. 104-555 at 2 (1996), reprinted in 1996 U.S.Code Congressional and Administrative News 980, 981. Each state is encouraged to enact sex offender registration laws to include, among other things, "a person who is convicted of a criminal offense against a victim who is a minor ..." 42 U.S.C. § 14071(a)(1)(A). Kidnapping of a minor, except by a parent, is among the offenses that is defined as a "criminal offense against a victim who is a minor." § 14071(a)(3)(A)(i). Failure to implement the JWA could result in forfeiture of ten percent of funds that otherwise a State might be entitled to from the federal government under 42 U.S.C. § 3756. § 14071(g)(2). The thrust of the Prosecutor's argument is that the New Jersey Legislature must have intended to comply with the JWA (enacted September 13, 1994) when it enacted Megan's Law on October 31, 1994.[4] There is little doubt that New Jersey has complied with 43 U.S.C. § 14071 and has implemented its provisions. See, e.g., H.R.Rep. No. 104-555, at 5-6, 1996 U.S.C.A. at 984.[5] That does not mean that the courts have lost *426 their function in interpreting the State statutes and reviewing actions of officials charged with enforcement.
To the extent that the State asks us to reinterpret Megan's Law in light of the JWA, the language in Doe is well settled. The JWA was in effect when Doe was decided in 1995, and addressed the problem of sex offenses against children. No such offense occurred here. The Prosecutor essentially argues that if the judge's ruling were to stand, the State could suffer the loss of funds authorized by the JWA. That issue is irrelevant to this appeal. Moreover, the Prosecutor's claim of a violation of the JWA is without merit.
The 1994 Jacob Wetterling Act can only be applied to T.S. through this State's statute, and we are satisfied that in any event it cannot be applied to a non-sexual related criminal offense in 1982. To do so would create a new and additional penalty for a non-sex related offense and could in this case constitute a potential unconstitutional ex post facto application of the law.[6] Just as Megan's Law might constitute an ex post facto punishment if applied outside the parameters set by Doe, the JWA would be subject to similar unconstitutional defect if used to achieve application and punishment for an offense committed before enactment of the law. Furthermore, the JWA does not contain the procedural safeguards required by Doe, such as those evidenced by the RRAS and the availability of judicial review, to satisfy constitutional standards of due process.
Affirmed.
NOTES
[1] "Jacob Wetterling Act," 42 U.S.C. § 14071 et seq., which became effective September 13, 1994.
[2] See also McNeil v. Legislative Apportionment Comm'n of the State of N.J., 177 N.J. 364, 374, 828 A.2d 840 (2003). If literal interpretation is not required in construing the State Constitution, it should not be applied to this statute.
[3] While we are aware that N.J.S.A. 2C:13-1c2 was added by a 1986 amendment, T.S. was nonetheless not charged with other sexual offenses in existence in 1982, i.e., N.J.S.A. 2C:14-3b.
[4] The JWA is a statute which utilized Congress's power to condition its spending on compliance by the States. Here, Congress specifically chose to give the States grants, pursuant to 42 U.S.C. § 3756, provided that the States comply with the JWA. In the event that an issue of eligibility to receive funds arises, Congress has provided the Bureau of Justice Assistance, an administrative agency pursuant to 42 U.S.C. § 3741, the authority to resolve that issue. 42 U.S.C. § 3752.
[5] This document reflects New Jersey's compliance by quoting a Justice Department letter stating in pertinent part:

Hence, States will need to provide for such disclosure ... to comply with the Act, but they will retain discretion concerning specific standards and procedures and the nature and extent of disclosure in implementing this requirement. For example, New Jersey's multitiered system for classifying offenders based on risk and making varying degrees of disclosure on the basis of that classification would be consistent with the "public safety" disclosure provision of the Jacob Wetterling Act....
[6] See U.S. Const. art. I, § 9, cl. 3; N.J. Const. art. IV, § 7, ¶ 3.