949 A.2d 312 (2008)
401 N.J. Super. 152
NEW JERSEY SHORE BUILDERS ASSOCIATION, A Non-Profit New Jersey Corporation, Plaintiff-Respondent,
v.
TOWNSHIP OF JACKSON, a New Jersey Municipal Corporation located in Ocean County, Defendant-Appellant.
Builders League of South Jersey, Plaintiff-Appellant,
v.
Egg Harbor Township, in the County of Atlantic, a municipal corporation of the State of New Jersey, and the Mayor and Township Committee of Egg Harbor Township, Defendants-Respondents.
Nos. A-5805-06T3, A-1563-07T2
Superior Court of New Jersey, Appellate Division.
Argued May 13, 2008.
Decided June 23, 2008.
*313 Michael J. Gilmore argued the cause for appellant, Township of Jackson (Gilmore & Monahan, P.A., Toms River, attorneys; Mr. Gilmore, on the brief).
Richard J. Hoff, Jr., Cherry Hill, argued the cause for appellant, Builders League of South Jersey (Flaster/Greenberg P.C., attorneys; Robert M. Washburn, Mr. Hoff, and Matthew T. Stanger, on the brief).
Paul H. Schneider, Red Bank, argued the cause for respondent, New Jersey Shore Builders Association (Giordano, Halleran & Ciesla, attorneys; Mr. Schneider and Matthew N. Fiorovanti, on the brief).
Tara M. Garry argued the cause for respondents, Egg Harbor Township and the Mayor and Township Committee of Egg Harbor Township (Law Offices of Marc Friedman, Upper Montclair, attorneys; Ms. Garry, on the brief).
Before Judges WINKELSTEIN, YANNOTTI and LeWINN.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
In these consolidated appeals, the court is asked to determine the limits of a municipality's authority to condition development approvals on a developer's setting aside land to be used for common open space or recreational areas and facilities, or to pay an assessment in lieu of the set-aside. The New Jersey Shore Builders Association has challenged amendments to the Jackson Township Land Use and Development Code, and the Builders *314 League of South Jersey has challenged amendments to the Egg Harbor Township Code, which require these exactions as a condition of development approvals for all sizable residential developments, not simply for approvals of "planned developments" as defined in the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, which the parties agree may be conditioned on set-asides for common open space and recreational areas.[1]
In the Jackson Township case, the trial court concluded that the ordinance requirements were beyond the authority granted to the municipality by the Legislature in the MLUL, and declared the ordinance to be ultra vires and unenforceable. In the Egg Harbor Township case, the trial court concluded that the exaction requirements were authorized by the MLUL and were valid and enforceable.
We conclude that the MLUL does not empower municipal governments to require developers to set aside land for common open space or recreational areas and facilities, except with regard to applications for planned developments as defined in the MLUL, see N.J.S.A. 40:55D-6 (defining planned developments), or to make payments in lieu of those set-asides. Accordingly, we affirm the order that the Jackson Township ordinance is ultra vires, and reverse the order that validated the Egg Harbor Township ordinance.

I. Jackson Township
In May 2003, Jackson Township adopted Ordinance 06-03, which modified Section 109-178 of its municipal code. The ordinance provided that a minimum of 10% to 40% of a tract of land proposed for development, depending on the zoning district, "shall be set aside for open space." It also provided that "[w]ithin any development, a minimum of 50% of the open space area shall be land which can be developed for recreational use." In Section 109-178.1, the amendments established recreation standards for residential developments.
In 2006, Jackson Township adopted Ordinance 02-06, revising Section 109-178.1 and adding Sections 109-178.2 and 109-178.3. The revised section 109-178.1 states, in part, that all residential development must provide 12.5 acres of land to be used for recreational purposes per one thousand projected residents of the development "in accordance with the population standards for community parks, neighborhood parks and mini-parks set forth in section 109-178.2.B." Section 109-178.1 provides a table of "recommended standards for recreation facilities," setting forth each type of facility recommended per number of residents. The ordinance sets forth measurements for each area to be set aside, and includes a method for calculating the number of projected residents in a proposed development. When a developer cannot meet all of the provisions for recreational facilities, or by agreement with the planning board, the developer may "make a contribution in lieu of all or a part of the requirements . . ., by contributing to off-tract recreational improvements pursuant to the terms" of Section 109-178.2.
Section 109-178.2, "Developer Contributions for Off-Tract Improvements," states that "[s]eparate and apart from the provisions of N.J.S.A. 40:55D-42[[2]], as a condition *315 of subdivision or site plan approval, the Planning [B]oard of Jackson Township shall require a developer to pay its fair share for off-tract open space and/or recreational land and improvements." The remainder of that section governs how those costs are calculated.
Section 109-178.3, also added in 2006, titled "Relationship Between Open-Space Requirement and Recreational Facilities," states:
Notwithstanding any provision to the contrary in Section 109-178 (open spaces), by satisfying the recreational facilities requirements of Sections 109-178.1 or 109-178.2, either by designing and constructing recreational facilities on site, by an in lieu contribution, or by a combination [thereof], a developer shall be deemed to have satisfied the requirement for usable, upland open space in accordance with section 109-178.A(4) and the open space set aside requirement of Section 109-178 shall be proportionately reduced for said development.
Shore Builders initially challenged the 2003 ordinance amendments, and subsequently amended its complaint to include the 2006 amendments. In May 2007, the trial court granted Shore Builders' summary judgment motion, finding Ordinances 06-03 and 02-06 to be ultra vires and unenforceable. In its written opinion, the court stated:
There is . . . no authorization under the MLUL (aside from planned unit developments, planned unit residential developments and residential clusters) to allow municipalities to require on-site set-asides of areas devoted to open space except to the extent that a municipality is prepared to compensate the developer for any lands on-site, which are mandated by its ordinance to be utilized for open space.

II. Egg Harbor Township
In 1992, Egg Harbor Township adopted Ordinance 20, which required a residential developer to set aside one-half acre for recreation and open space for each one thousand persons expected to reside in a proposed development. It also provided that the Township Code's requirements relating to construction of recreational facilities and total percentage of open space may be modified or waived by the planning board, if that board determined that "both the area local to the development and Egg Harbor Township's park and recreation needs would be better served by an agreed cash bequest to the designated parks and recreation budget." Approximately ten years later, the planning board adopted the "Revised Recreation and Open Space Element," which included an inventory of existing recreational facilities, provided a "needs analysis based on current population and population projections," and made recommendations for addressing recreational and open space needs.
Prior to 2004, Section 94-28D of the Township Code required developers to install recreational facilities in all residential developments that required those facilities, "on the land that has been set aside for recreational purposes." The Code provided a schedule of facilities to be determined by the number of dwelling units in a development; these facilities included tot courts, tennis courts, basketball grounds, play fields, and multipurpose areas. Section 94-28A(6) and Section 94-28G of the Code together provided that "[t]he developer shall have the option to post an off-tract assessment" in lieu of "[t]he requirements . . . relating to the construction of . . . recreation facilities and the total percentage of open space required within a development." A "cash bequest" would be *316 made to "the designated parks and recreation budget."
In July 2004, Egg Harbor Township's governing body enacted Ordinance 41-2004 (Ordinance 41), which replaced portions of section 94-28A(6) of the Code with the following: "The Township shall have the option to require a developer to post an off-tract assessment." It also amended section 94-28A(8) to require "recreational opportunities" for all major residential developments, to be determined pursuant to a specific formula. The ordinance modified the number and type of recreational facilities required per number of dwelling units.
In October 2004, the Township enacted Ordinance 60-2004 (Ordinance 60), which again amended section 94-28A(6). It continued to give the Township the option to require a developer to post an off-tract assessment, pursuant to calculations as set forth in the ordinance, but in designated zoning districts it gave developers the option to post those assessments if the developer determined "that the on-site construction of active recreation facilities and/or provision of open space for passive recreation would result in a loss of potential dwelling units on the subject parcel."
Because much of Egg Harbor Township falls within the Pinelands Regional Growth Areas, the ordinances were reviewed by the Pinelands Commission, which determined that Ordinance 41, as amended by Ordinance 60, complied with the Pinelands Comprehensive Management Plan, N.J.A.C. 7:50-1.1 to -10.30. The Commission found that the imposition of open space and recreational requirements on developers was consistent with the guidelines of N.J.A.C. 7:50-6.144(a)3.
The Builders League challenged Ordinances 41 and 60. Following cross-motions for summary judgment, in May 2007, the trial court concluded that the ordinances were not ultra vires or unconstitutional and that the MLUL provided municipalities with the authority to require set-asides for open space and recreation, as well as monetary assessments in lieu of those set-asides.

III. Municipal Zoning Authority
A municipality does not have the inherent right to zone. Rumson Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 349, 828 A.2d 317 (2003). "Municipalities . . . have only that power [to zone] that the Legislature has delegated to them." N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 224, 729 A.2d 21 (1999). A local government's authority "to plan and zone and, in so doing, to impose conditions on a developer, is a delegation of police power." Toll Bros., Inc. v. Bd. of Chosen Freeholders, County of Burlington, 194 N.J 223, 242, 944 A.2d 1 (2008). The Legislature has delegated that zoning power to local governments in the MLUL. Id. at 243, 944 A.2d 1; N.Y. SMSA Ltd. P'ship v. Twp. Council of Edison, 382 N.J.Super. 541, 546, 889 A.2d 1129 (App.Div.2006).
The MLUL is "a comprehensive statute that allows municipalities to adopt ordinances to regulate land development 'in a manner which will promote the public health, safety, morals and general welfare' using uniform and efficient procedures." Rumson Estates, supra, 177 N.J. at 349, 828 A.2d 317 (quoting Levin v. Twp. of Parsippany-Troy Hills, 82 N.J. 174, 179, 411 A.2d 704 (1980)). Zoning ordinances enacted pursuant to the MLUL must advance the statute's underlying goals, which are enumerated in N.J.S.A. 40:55D-2. Id. at 349-50, 828 A.2d 317. Those goals, as are applicable to the issues here, include the following:
c. To provide adequate . . . open space;

*317 . . . .
e. To promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment;
. . . .
g. To provide sufficient space in appropriate locations for a variety of . . . recreational . . . uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens;
. . . .
j. To promote the conservation of . . . open space . . . ;
k. To encourage planned unit developments which incorporate the best features of design and relate the type, design and layout of . . . recreational development to the particular site. . . .
[N.J.S.A. 40:55D-2.]
Zoning ordinances enacted pursuant to these principles are entitled to a presumption of validity, Riggs v. Twp. of Long Beach, 109 N.J. 601, 610-11, 538 A.2d 808 (1988), and a party challenging the zoning ordinance has the burden of overcoming that presumption. Ward v. Twp. of Montgomery, 28 N.J. 529, 539, 147 A.2d 248 (1959). Like other laws enacted by local governments, zoning laws are liberally construed in the municipality's favor. Rumson Estates, supra, 177 N.J. at 351, 828 A.2d 317 (citing N.J. Const. art. IV, § 7, ¶ 11).
Notwithstanding the liberal construction afforded to municipal action, in the enactment of zoning laws a local government may only "advance an authorized purpose `in a manner permitted by the legislature.'" Holmdel Builders Ass'n v. Twp. of Holmdel, 121 N.J. 550, 570, 583 A.2d 277 (1990) (quoting State v. C.I.B. Int'l, 83 N.J. 262, 272, 416 A.2d 362 (1980)). "[A] municipality's power to effectuate planning schemes . . . must be exercised in strict conformity with the delegating enactment  the MLUL." Toll Bros., supra, 194 N.J. at 243, 944 A.2d 1.

IV. Discussion
In challenging the exactions, both Shore Builders and the Builders League claim that the Townships lack authority to require on-site dedication of common open space or recreational areas and facilities, other than for planned developments. They also assert that the Townships lack authority to require payments in lieu of those set-asides. The Townships concede that the MLUL does not provide them with the express authority to require the challenged exactions; however, they assert that the MLUL impliedly authorizes them to do so. See Holmdel Builders Ass'n, supra, 121 N.J. at 566, 583 A.2d 277 (municipalities possess "such rights and powers as have been granted in express terms, or arise by necessary or fair implication, or are incident to the powers expressly conferred, or are essential to the declared objects and purposes of the municipality").
In our analysis of the parties' positions, we are guided by well-established principles of statutory construction, the most important being the intent of the Legislature. In re T.S., 364 N.J.Super. 1, 7, 834 A.2d 419 (App.Div.2003). To determine that intent, we begin by examining the plain language of the statute, which should be given "its ordinary meaning, absent a legislative intent to the contrary." Burns v. Belafsky, 166 N.J. 466, 473, 766 A.2d 1095 (2001). The words of a statute must be given their common-sense meaning in the context of the entire statute, which should be afforded a "harmonizing construction . . . and read . . . so as to give *318 effect to all of its provisions and to the legislative will." T.S., supra, 364 N.J.Super. at 6, 834 A.2d 419.
In determining legislative intent, "[s]pecific meaning supersedes a general one." City Council of Orange Twp. v. Brown, 249 N.J.Super. 185, 191, 592 A.2d 260 (App.Div.1991); see also Lewis v. Bd. of Trs., Pub. Employees' Retirement Sys., 366 N.J.Super. 411, 416, 841 A.2d 483 (App.Div.) ("[T]he inclusion of specific words and phrases controls or limits more general words and phrases."), certif. denied, 180 N.J. 357, 851 A.2d 650 (2004). Applying these principles here, we conclude that the MLUL precludes the challenged set-asides, except in conjunction with planned developments.
The MLUL defines "planned development" as "planned unit development, planned unit residential development, residential cluster, planned commercial development or planned industrial development." N.J.S.A. 40:55D-6. Zoning ordinances may "[p]rovide districts for planned developments." N.J.S.A. 40:55D-65c. The standards applicable in these districts may take into account "the amount, location and proposed use of open space." Ibid. A number of sections of the MLUL, which we will discuss in the ensuing paragraphs, make reference to the set-aside of common open space as a condition of a planned development application. "Common open space" is defined as "an open space area within or related to a site designated as a development, and designed and intended for the use or enjoyment of residents and owners of the development." N.J.S.A. 40:55D-3.
We begin with N.J.S.A. 40:55D-43, titled "Standards for the establishment of open space organization." Though this section of the MLUL allows a municipality, when permitting "planned unit development, planned unit residential development or residential cluster," the right to accept a dedication of land for "public use," it does not permit the municipality to require that "land proposed to be set aside for common open space be dedicated or made available to public use." N.J.S.A. 40:55D-43a. In either event, this statute applies only to planned developments. The Townships' position that the MLUL permits set-asides for common open space for all developments renders meaningless the limiting language in the statute to planned developments. See Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 521, 472 A.2d 517 (1984) (in construing a statute, we avoid a construction that will render any portion of the statute to be superfluous).
Another provision of the MLUL that, on its face, makes reference to set-asides for open space is N.J.S.A. 40:55D-38b(5). It states that ordinances requiring planning board approval of subdivisions or site plans must also include: "[p]rovisions ensuring . . . [r]eservation pursuant to [N.J.S.A. 40:55D-43] of any open space to be set aside for use and benefit of the residents of planned development, resulting from the application of standards of density or intensity of land use, contained in the zoning ordinance, pursuant to [N.J.S.A. 40:55D-65(c)]." N.J.S.A. 40:55D-38b(5). Thus, that statute also applies only for the "benefit of the residents of planned development[s]."
The same analysis applies to N.J.S.A. 40:55D-39, which lists the discretionary contents of an ordinance requiring planning board approval of subdivisions or site plans. The common open space references there are contained in subsection c, which is captioned: "Provisions for planned development." It says that a zoning ordinance requiring planning board approval of subdivisions or site plans may include a provision:

*319 (2) Requiring that any common open space resulting from the application of standards for density, or intensity of land use, be set aside for the use and benefit of the owners or residents in such development subject to [N.J.S.A. 40:55D-43];
(3) Setting forth how the amount and location of any common open space shall be determined and how its improvement and maintenance for common open space use shall be secured subject to [N.J.S.A. 40:55D-43];
. . . .
(5) Setting forth any requirement that the approval by the planning board of a greater concentration of density or intensity of land use for any section to be developed be offset by a smaller concentration in any completed prior stage or by an appropriate reservation of common open space on the remaining land by grant of easement or by covenant in favor of the municipality. . . .
[N.J.S.A. 40:55D-39c(2), (3), and (5).]
The plain language of this section also limits its application to planned developments. Subjecting all developments, not simply planned developments, to these provisions would render the limiting language of the statute meaningless.
The MLUL also makes reference to common open space and recreation in N.J.S.A. 40:55D-45. It states that the planning board shall find "[t]hat the proposals for maintenance and conservation of the common open space are reliable, and the amount, location, and purpose of the common open space are adequate." N.J.S.A. 40:55D-45b. N.J.S.A. 40:55D-45c states that the planning board shall find that "provision for the physical design of the proposed development for . . . recreation . . . [is] adequate." These provisions, however, are also limited in their application to planned developments. The introductory paragraph of N.J.S.A. 40:55D-45 states: "Every ordinance pursuant to this article that provides for planned developments shall require. . . ." The Townships' position would read the introductory language out of the statute.
The same holds true with regard to N.J.S.A. 40:55D-45.2, which lists optional inclusions for general development plans. That statute states, in part, that general development plans may include "[a]n open space plan showing the proposed land area and general location of parks and any other land area to be set aside for conservation and recreational purposes and a general description of improvements proposed to be made thereon. . . ." N.J.S.A. 40:55D-45.2c. This provision was enacted as part of a 1987 supplement to the MLUL to provide for general development plans, which are defined as "comprehensive plan[s] for the development of . . . planned development[s]." Citizens United to Protect the Maurice River & its Tributaries, Inc. v. City of Millville Planning Bd., 395 N.J.Super. 434, 446, 929 A.2d 606 (App. Div.2007) (quoting N.J.S.A. 40:55D-4). Consequently, the reference in N.J.S.A. 40:55D-45.2c to open space plans, parks and other areas set aside for conservation or recreation is also limited to planned developments.
The MLUL does contain a provision, however, which refers to the reservation of land for public use in all developments.[3] It is found in N.J.S.A. 40:55D-38, which lists the provisions that an ordinance requiring planning board approval for subdivisions or site plans must include. Among those required provisions is that the ordinance must ensure "[s]uitable size, shape and location for any area reserved for *320 public use pursuant to [N.J.S.A. 40:55D-44]." N.J.S.A. 40:55D-38b(4) (emphasis added). By its own terms, however, the authority to ensure that areas are reserved for public use applies only in conjunction with N.J.S.A. 40:55D-44. See W. Park Ave., Inc. v. Twp. of Ocean, 48 N.J. 122, 125-26, 224 A.2d 1 (1966) (holding that while exactions for contributions to local board of education were illegal, N.J.S.A. 40:55-1.20, the predecessor statute to N.J.S.A. 40:55D-44, gave local governments the authority to require developers to reserve portions of their properties for parks and recreational purposes). N.J.S.A. 40:55D-44 limits municipalities' ability to reserve land for public areas to situations in which they compensate the owner of the property. The statute provides, in part:
If the master plan or the official map provides for the reservation of . . . public areas within the proposed development, before approving a subdivision or site plan, the planning board may further require that such . . . areas be shown on the plat in locations and sizes suitable to their intended uses. The planning board may reserve the location and extent of such . . . areas shown on the plat for a period of 1 year after the approval of the final plat or within such further time as may be agreed to by the developer. Unless during such period or extension thereof the municipality shall have entered into a contract to purchase or institute condemnation proceedings according to law for the fee or a lesser interest in the land comprising such . . . areas, the developer shall not be bound by such reservations shown on the plat and may proceed to use such land for private use in accordance with applicable development regulations. . . .
The developer shall be entitled to just compensation for actual loss found to be caused by such temporary reservation and deprivation of use. . . .
[N.J.S.A. 40:55D-44.]
The plain language of this statute, while permitting a municipality to require a developer to reserve land for public areas, nevertheless requires the municipality to compensate the developer. The statute does not suggest that if the reservation of public areas becomes permanent, the developer will not be compensated. Such a construction would require a local government to compensate a developer for a temporary taking, but not require compensation for a permanent taking. We do not read the MLUL to require such an anomalous result. State v. Gill, 47 N.J. 441, 444, 221 A.2d 521 (1966) (the construction of a statute should not lead to "absurd or unreasonable results").
We turn next to another reference in the MLUL to the regulation of open space, N.J.S.A. 40:55D-65. This provision describes the contents of a zoning ordinance, and states that a zoning ordinance may "regulate the nature and extent of the use of land for trade, industry, residence, open space or other purposes." N.J.S.A. 40:55D-65a. Although it generally permits a zoning ordinance to regulate open space, it does not provide a municipality with the specific authority to require common open space and recreational areas as conditions of residential developments. The general nature of N.J.S.A. 40:55D-65a, which allows for the regulation of the use of land for open space and other purposes, does not overcome the specific language of N.J.S.A. 40:55D-44, which requires that compensation be paid for land set aside for public use, or the specific language of N.J.S.A. 40:55D-43, which permits set-asides for common open space without compensation, but limits that authority to applications for planned developments.
*321 Next, we address the Townships' arguments that the multiple references to recreation and open space in the general purposes section of the MLUL, N.J.S.A. 40:55D-2, authorize a municipality to require a developer to provide recreation and common open space for all sizeable developments. The following subsections of the MLUL encourage or promote either open space or recreation: N.J.S.A. 40:55D-2(c) (to "provide adequate . . . open space"); N.J.S.A. 40:55D-2(e) (to promote appropriate population densities to preserve the environment); N.J.S.A. 40:55D-2(g) ("to provide sufficient space in appropriate locations for a variety of . . . recreational, commercial and industrial uses and open space, both public and private"); N.J.S.A. 40:55D-2(j) (to promote conservation of open space); and N.J.S.A. 40:55D-2(k) (to encourage "planned unit developments which incorporate the best features of design and relate the type, design and layout of residential, commercial, industrial and recreational development to the particular site").
Without question, the MLUL makes recreation and open space important considerations in land use planning. Nevertheless, the general purposes of the MLUL do not provide local governments with the specific authority to require a developer to set aside common open space or recreational areas in projects other than planned developments without compensating the developer. We agree with the trial court's conclusion in the Jackson Township case, that the "unspecified language" of the general purposes section of the MLUL cannot "override the specific and targeted provisions of the statute" that limit the set-aside for open space and recreation to planned developments.
Next, we address those provisions of the Townships' ordinances that require off-site contributions in lieu of on-site set-asides. The only section of the MLUL that addresses off-site, or off-tract, contributions is N.J.S.A. 40:55D-42. That statute, titled "Contribution for off-tract water, sewer, drainage, and street improvements," states:
The governing body may by ordinance adopt regulations requiring a developer, as a condition for approval of a subdivision or site plan, to pay the pro-rata share of the cost of providing only reasonable and necessary street improvements and water, sewerage and drainage facilities, and easements therefor, located off-tract but necessitated or required by construction or improvements within such subdivision or development. Such regulations . . . shall establish fair and reasonable standards to determine the proportionate or pro-rata amount of the cost of such facilities that shall be borne by each developer or owner within a related and common area, which standards shall not be altered subsequent to preliminary approval. . . .
[N.J.S.A. 40:55D-42.]
Shore Builders and the Builders League do not dispute that this provision permits off-tract contributions as conditions for development approvals, but they argue that the contributions are limited only to off-tract improvements for "water, sewer, drainage, and street improvements." We agree.
In Toll Bros., supra, the Court directly addressed the scope of N.J.S.A. 40:55D-42, stating that this statute "provides the boundaries of a public entity's power with respect to off-tract improvements." 194 N.J. at 243, 944 A.2d 1. The Court had previously discussed those boundaries in New Jersey Builders Association v. Mayor and Township Committee, Bernards Township, 108 N.J. 223, 237, 528 A.2d 555 (1987), where it determined that the township ordinance that required new developers *322 to pay a pro rata share of the township's long-term, $20 million road improvement plan exceeded its authority under the MLUL. The Court construed N.J.S.A. 40:55D-42 to limit a local government's authority to require exactions from a developer, stating:
Thus, the critical language of the statute permits a municipality to require a developer "to pay his pro rata share of the cost of providing only reasonable and necessary street improvements and water, sewerage and drainage facilities, and easements therefor, located outside the property limits of the subdivision or development but necessitated or required by construction or improvements within such subdivision or development." . . . We conclude that the plain meaning and obvious legislative intent was to limit the municipal authority only to improvements the need for which arose as a direct consequence of the particular subdivision or development under review.
[Ibid. (citation omitted).] Though the focus of the Court's decision was the failure of the municipality to establish that the developer's pro rata share of the cost of the road improvements was "a direct consequence of the particular subdivision or development under review," the Court specifically articulated, in quoting the statute, that a developer may only pay the pro rata share of the cost of providing "reasonable and necessary street improvements and water, sewerage and drainage facilities, and easements therefor." Ibid.

We are mindful that the Court also observed that "[l]ess common but frequently sustained are requirements for dedication of land for recreational purposes, or payments in lieu of dedication, where the purpose of the dedication or payment is primarily, but not exclusively, to benefit the residents of the new development." Id. at 229, 528 A.2d 555. The Court cited as examples cases from other jurisdictions both upholding and invalidating those dedications. Id. at 229-30, 528 A.2d 555. The Court did not, however, address whether these types of dedications, or payments in lieu, were valid under the MLUL.
This court has also examined the limits of a developer's obligation to make contributions for off-site improvements. We have concluded that a planning board's conditioning of a developer's site plan approvals partly upon the developer's cash contributions toward the cost of a fire truck, fire house, and recreation center were "illegal exaction[s]." Twp. of Marlboro v. Planning Bd., Twp. of Holmdel, 279 N.J.Super. 638, 641, 643, 648, 653 A.2d 1183 (App.Div.), certif. denied, 141 N.J. 98, 660 A.2d 1196 (1995). We observed:
[T]he municipal authority to condition development approvals on the developer's agreement to provide or contribute to off-site improvements is limited by N.J.S.A. 40:55D-42, which permits such contributions only with respect to street improvements and water, sewerage and drainage facilities, and only to the extent necessitated by the reasonably anticipated impact of the development on those facilities.
[Id. at 642-43, 653 A.2d 1183.]
In other words, "contributions for recreational facilities and for fire-fighting facilities, even those necessary for proper servicing of the development itself, are beyond the authorization of the statute, and hence a development application may not be conditioned on the developer's undertaking to provide them." Id. at 643, 653 A.2d 1183.
More recently, we held that a zoning board's conditioning variances upon a developer's agreement to subsidize the off-site construction of a proposed amphi-theater *323 in a municipal park was invalid. Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adjustment, 397 N.J.Super. 335, 359, 937 A.2d 334 (App. Div.2008). Recognizing that "a land use board's imposition of a financial contribution for an off-tract purpose `must be authorized by statute,'" we observed that "[t]he trial court correctly recognized that [the developer's] $4,000 per-unit payment was not designated for those particular sorts of off-site improvements [specifically listed in N.J.S.A. 40:55D-42]." Id. at 358-59, 937 A.2d 334.
These cases compel a conclusion that N.J.S.A. 40:55D-42 limits a municipality's authority to require contributions for off-site improvements to those specifically enumerated in the statute. Because common open space and recreational areas are not listed in N.J.S.A. 40:55D-42, a municipality may not condition a development approval on those exactions.

V. The Pinelands Protection Act
Finally, we address Egg Harbor Township's assertion that because the Pinelands Commission approved the challenged ordinances, those ordinances should be considered a valid exercise of municipal authority. The Township offers no support for that claim. The Township points to no provision of the Pinelands Protection Act that would extend its reach to areas outside the pinelands, even if those areas are located within a pinelands municipality. Put simply, that exactions for open space and recreational areas and facilities may be permitted within the pinelands areas, see e.g., N.J.A.C. 7:50-6.141 to -6.144, does not provide local governments with the authority to require those exactions for developments other than planned developments in areas outside the pinelands, even if located within the same municipality.[4]

VI. Conclusion
To be sure, the construction of additional homes, whether qualifying as planned developments or otherwise, increases a municipality's open space and recreational needs. The Townships' desires to meet those needs are laudable. Nevertheless, although maintaining common open space and recreational areas are important goals of the MLUL, municipalities do not have unlimited authority to effectuate those goals. The Legislature has chosen to limit a municipality's authority to obtain set-asides for common open space and recreational areas to planned developments, and to limit off-site contributions to water, sewer, drainage and street improvements.
Accordingly, we affirm the trial court's order in the Jackson Township case, and reverse the trial court's order in the Egg Harbor Township case. We remand the Egg Harbor Township case to the trial *324 court to enter an order consistent with this opinion.
NOTES
[1] Portions of both Jackson Township and Egg Harbor Township are located in the pinelands area encompassed by the Pinelands Protection Act, N.J.S.A. 13:18A-1 to -58. Plaintiffs do not challenge the exactions as they pertain to those areas of the municipalities that are subject to that act.
[2] N.J.S.A. 40:55D-42 is captioned: "Contribution for off-tract water, sewer, drainage, and street improvements."
[3] Public areas include public open space and public recreational areas. N.J.S.A. 40:55D-6.
[4] The Builders League raises additional arguments in its challenge to the Egg Harbor Township ordinance amendments. It claims that the amendments constitute an unconstitutional taking and an illegal form of taxation. Alternatively, it asserts that even if a municipality has the legal authority to condition developments on the subject exactions, the ordinance does not establish the required nexus between the objective of providing common open space and recreational areas and facilities and the means implemented by the ordinance to achieve those goals. Because we have concluded that for other than planned developments, the MLUL does not provide municipalities with the authority to condition developments on exactions for common open space and recreational facilities, we do not address the Builders League's remaining arguments. See Shire Inn, Inc. v. Borough of Avon-by-the-Sea, 321 N.J.Super. 462, 469-70, 729 A.2d 473 (App.Div.) (court should decide only what is necessary to resolve the case before it), certif. denied, 162 N.J. 132, 741 A.2d 99 (1999).